

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2003

# Brockington v. Vaughn

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Brockington v. Vaughn" (2003). *2003 Decisions.* Paper 475.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/475

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1275

———————

RICHARD BROCKINGTON,
                              Appellant

v.

DONALD VAUGHN,
SUPERINTENDENT OF GRATERFORD SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,
MICHAEL FISHER

———————————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 99-cv-04961
(Honorable Mary A. McLaughlin)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2003

Before:  SCIRICA, <u>Chief Judge</u>*, AMBRO and WEIS, <u>Circuit Judges</u>

(Filed:   June 9, 2003)

————————

*Judge Scirica began his term as Chief Judge on May 4, 2003.

## OPINION OF THE COURT

SCIRICA, <u>Chief</u> <u>Judge</u>.

This is an appeal from a denial of a petition under 28 U.S.C. § 2254.

### I.

In 1982, a state jury convicted Richard Brockington of conspiracy to commit murder and first-degree murder. He was sentenced to life. On October 7, 1999, Brockington filed a federal habeas petition contending his appellate attorney had rendered ineffective assistance of counsel by failing to raise trial counsel's alleged ineffectiveness for failing to object to the first-degree murder and accomplice jury instructions.

The Magistrate Judge rejected the claim in a report and recommendation. Brockington then withdrew his ineffective assistance challenge to the murder instruction (which had been his primary claim), challenging only the accomplice charge. The District Court rejected the altered claim. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. The standards of the Anti-Terrorism and Effective Death Penalty Act apply. 28 U.S.C. § 2254(d)(1).

A certificate of appealability was granted only on the single claim that appellate counsel was ineffective for failing to raise trial counsel's failure to object to the jury instructions on accomplice liability.

At issue is whether the District Court erred by finding the state courts neither misapplied nor contradicted <u>Strickland v. Washington</u>, 466 U.S. 668 (1989), in finding appellate counsel on direct state appeal was not ineffective for failing to raise trial counsel "ineffectiveness" for failing to object to the jury charge as to accomplice liability.

## II.

There was a long-term feud between the murder victim, Milton Clark, and brothers Richard Brockington and Clarence Hammond. Over twenty years ago, on May 3, 1982, the brothers clashed with Clark and chased him on a street. Hammond caught Clark and stabbed him. Clark shot Brockington in the leg and Hammond in the shoulder. In the continuing melee, Clark fell into a gutter. Hammond continued to stab him in the chest while Brockington beat and kicked him. There were several eyewitnesses, including a police officer.

Brockington was charged with murder generally, voluntary manslaughter, and conspiracy to murder. At trial, he contended the killing was justified because Clark had shot him. In its charge, the trial judge instructed the jury on first degree murder and third degree murder. The court did not charge on second-degree murder (felony-murder) because there was no other felony charged but the killing. On November 9, 1982, the jury convicted both brothers of first-degree murder and criminal conspiracy to murder.[1]

---

[1]In the ensuing month before the fatal stabbing, Brockington and his brother, Clarence Hammond, had quarreled with the Milton Clark at the Lennox Lounge at 19th Street and

(continued...)

3

III.

The certified issue under review is premised on alleged error in one part of

the trial court's accomplice charge relating to the first-degree murder charge.   The

---

[1](...continued)

Columbia Avenue in North Philadelphia.  Because of these arguments, the barmaid often asked them to leave the establishment.  On the afternoon of the fatal stabbing, May 3, 1982, Brockington and Hammond again argued with Clark at the bar.  Again, the barmaid requested that they "take it outside."

Later that evening, Brockington, Hammond and Clark returned to the bar. Brockington approached a drug dealer, Stanley Smith, in an effort to buy narcotics, but he did not have the $2.00 to buy the pill he wanted, and Smith would not give him the pill for the $1.30 he had.  Enraged, Brockington grabbed Smith by the collar and dragged him outside; Hammond came alone.  Outside, an argument ensued between Smith and Brockington.  Clark followed them outside.  When Brockington reached down into his sock, Clark warned Smith to "watch out."  Smith had seen a knife in Brockington's sock the previous day, so he ran.  Brockington and Hammond ran after him for a short while, but Smith escaped.

Brockington and Hammond returned to the corner where the bar was located.  For the second time that day, an argument developed between Brockington, his brother, and Clark, viewed by testifying witnesses.  Clark said, "I don't want to get into that," walked away and crossed the street.  Brockington and Hammond pursued him. Hammond pulled out a knife and stabbed Clark once in the chest to a depth of approximately six and one-half inches.  In response, Clark took out a gun and fired striking Hammond in the wrist and shoulder and Brockington above the knee. Brockington initially fell down, but he got back up and continued his pursuit of Clark along with his brother.

Philadelphia Police Officer Joseph Painter was on routine patrol when he heard gunfire.  He saw Brockington and his brother overpower Clark, who fell into the gutter between two parked cars.  Hammond stabbed Clark again as Brockington held him down and beat him.  All three men collapsed on the street from their injuries.  Hammond was observed dragging himself to a nearby storm sewer inlet, where he dropped a bloody knife. Officer Painter arrested the brothers.  The knife was retrieved from the top of a pile of debris in the sewer.  Clark was rushed to a nearby hospital, where he was pronounced dead.  An autopsy determined that he had been stabbed repeatedly in such a manner and with such force that each of three deep knife wounds, standing alone, would have proved fatal.  He suffered multiple injuries all over his body.

4

challenged instruction states:

> You may find the defendant guilty of a crime on the theory
> that he was an accomplice as long as you are satisfied beyond
> a reasonable doubt that the crime was committed and that the
> defendant was an accomplice of the person who committed it.
> And, this extends even to a homicide which is a contingency
> of the natural and probable consequences of the acts or conduct
> of the parties even though such homicide is not specifically
> contemplated by the parties.

In assessing jury instructions, the challenged language must be viewed in the context of the jury charge as a whole. Smith v. Horn, 120 F.3d 400, 411 (3d Cir. 1997).[2]

Immediately preceding the challenged charge, the court instructed:

> A defendant is guilty of a crime if he is an accomplice of
> another person who committed that crime. He is an accomplice
> if with the intent of promoting or facilitating the commission
> of the crime, he solicits, commands, encourages or requests
> the other person to commit it, or aids, or agrees to aid, or
> attempts to aid the other person in planning or committing it.
> (emphasis added).

After he charged the jury on accomplice liability, the judge charged on homicide, explaining the differing intent requirements for the different degrees of murder

---

[2]A relevant initial instruction was: "Now, during my charge when I use the singular defendant, I'm also referring to the plural defendants, and I'm also referring to them individually, because it will be your responsibility to look at the evidence and decide whether each of them is guilty or not guilty, or whether one is guilty and the other is not guilty." The court also instructed the jury that the Commonwealth at all times carries the burden of proof beyond a reasonable doubt.

5

and for voluntary manslaughter.[3]   It is apparent, therefore, that the jury was specifically

instructed that Brockington could be guilty of conspiracy only if he conspired "with the

_____

[3]The court specified that the difference between murder and manslaughter is that in murder, the killing is done with malice; the court defined malice and explained that it may be expressed or implied, which might include the use of a deadly weapon upon a vital part of the victim's body.  The first-degree murder instruction no longer challenged in this case was:

> Murder of the First Degree.  A criminal homicide constitutes
> murder of the first degree when it is committed by an intentional
> killing.
> Thus, in order to find the defendant guilty of murder in the first
> degree, you must find that the defendant caused the death of another
> person, or that an accomplice caused the death of another person.
> That is, you must find that the defendant's act, or an accomplice's
> act is the legal cause of death of Milton Clark and thereafter, you
> must determine if the killing was intentional.

Immediately after giving this instruction, the court continued:

> Now, what is an intentional killing?
> Section 2502(D) of the same Crimes Code provides verbatim
> or word-for-word as follows:
> Intentional killing.  Killing by means of poison, or by lying
> in wait, or by any other kind of willful, deliberate, and
> premeditating killing.
> Therefore, in order to find the defendant guilty of murder of
> the first degree, you must find that the killing was a willful,
> deliberate, and premeditated act.  You must ask yourselves
> the question, did the defendant have the willful, deliberate,
> and premeditated specific intent to kill at the time of the killing.

See 18 Pa.C.S. § 2502.  The court defined willful, deliberate, and premeditated; specified that no appreciable length of time is required to form the intent to kill; and explained that intent to kill may also be inferred from circumstantial evidence – albeit with the caution that all of the circumstances of the killing must be considered.

6

intent of promoting or facilitating the crime of murder."

## IV.

As noted, Brockington withdrew his objection to the first-degree murder charge. But he argues that the accomplice liability charge was deficient because it was given in conjunction with the first-degree murder charge and the instruction did not make clear that the specific intent to kill necessary for a conviction of first-degree murder must be present in both the actual killer and the accomplice. Continuing his argument, Brockington contends that the accomplice liability charge "allowed/invited petitioner's jury to convict him of first degree murder as an accomplice even though no homicide was 'specifically contemplated by the parties'" and that it "removed the specific intent element of first degree murder as to an accomplice from the jury's consideration." As noted, he claims that trial counsel was ineffective for failing to object to the charge, and that his counsel on direct appeal was ineffective for failing to raise the issue of his trial counsel's ineffectiveness.

We have recently stated that "since the legislature drafted the law on first-degree murder, Pennsylvania law has clearly required that for an accomplice to be found guilty of first-degree murder, he must have intended that the victim be killed." Everett v. Beard, 290 F.3d 500, 513 (3d Cir. 2002); see also Smith, 120 F.3d at 411 ("specific intent to commit a killing, not simply intent to commit some other crime from which a killing results, is a prerequisite to a conviction of first degree murder."). Stated another way,

7

under Pennsylvania law, an accomplice in a crime during which a killing occurs may not be convicted of first-degree murder unless the Commonwealth proves that he harbored the specific intent to kill. See Pa. Cons. Stat. Ann. § 2502(a); Commonwealth v. Huffman, 638 A.2d 961, 962-63 (Pa. 1994).

> After a comprehensive review, the District Court here found:
>
> The challenged accomplice liability charge was clear. There is no reason to believe that the jury could or did conclude from it that if they found that the defendant was an accomplice to a non-intentional homicide they should convict him of first-degree murder. This is especially true given that after the trial judge instructed the jury on accomplice liability, he moved immediately into his discussion of the intent requirements for the different degrees of murder, which portion of the instruction the petitioner does not challenge. Finally, the charge was appropriately given in this case, because one of the options available to the jury was to convict the petitioner of third-degree murder as an accomplice.

The District Court also found:

> Finally, the state court could reasonably conclude that appellate counsel was not ineffective for not making an argument based on the instructions because such an argument would have been unlikely to lead to a reversal. Any error found would be subject to harmless error analysis. See Smith, 120 F.3d at 417. The Superior Court was dismissive of the ineffectiveness argument that appellate counsel did choose to make, namely that trial counsel was ineffective for failing to properly argue accomplice and conspiracy theories to the jury in closing argument. The Superior Court found that there was an "overwhelming amount of evidence before the court which strongly suggests that appellant and his co-conspirators did in fact act in concert in the series of transactions which

8

ultimately led to the victim's death." Commonwealth v. Brockington, J08040/85, at 3 (Pa. Super. Mar. 15, 1985).

There is an additional reason why the state court's rejection of the petitioner's claim was not objectively unreasonable. The second prong of the Strickland test requires that the petitioner establish that he was prejudiced by his counsel's failures. As mentioned above, several courts have found that there can be no prejudice from Huffman-type error where the jury is properly instructed on conspiracy to kill. See Burroughs v. Domovich, 2000 WL 122351, at*2 (E.D. Pa. Jan. 31, 2000); Commonwealth v. Wayne, 720 A.2d 456, 465 (Pa. 1988). This provides further support for the conclusion that the state court's decision was not unreasonable.

The murder charge separately and properly distinguished between intentional and non-intentional murder. Reviewing the jury charge in its entirety, we believe the trial judge properly instructed the jury on intent to kill. In deciding whether Brockington was guilty of conspiracy, the jury had to determine whether he had the specific intent to kill.

The state court determination was not only a reasonable application of Strickland, it was also correct. There could have been no jury confusion about whether Brockington, as the accomplice, had to have his own intent to kill. As the District Court found, the charge as a whole was proper.

V.

For these reasons, we will affirm the denial of Brokington's petition under 28 U.S.C. § 2254.

9

---

TO THE CLERK:

  Please file the foregoing opinion.

               /s/ Anthony J. Scirica
                Chief Judge