Justice Thomas
delivered the opinion of the Court.
This case arose from a fatal driveby shooting into a group of students standing in front of a Seattle high school. Brian *182 Ronquillo was ultimately identified as the gunman; at the time of the shooting, he was a passenger in a ear driven by respondent Cesar Sarausad II. A jury convicted Sarausad as an accomplice to second-degree murder, attempted murder, and assault; he was sentenced to just over 27 years of imprisonment. The Washington courts affirmed his conviction and sentence on direct review, and his state-court motions for posteonviction relief were denied.
Respondent, then, filed a federal petition for a writ of habeas corpus. The District Court granted the writ. On appeal, the Court of Appeals for the Ninth Circuit agreed with the District Court that the state-court decision was an objectively “unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U. S. C. § 2254(d)(1). The Court of Appeals found it unreasonable for the state court to reject Sarausad’s argument that certain jury instructions used at his trial were ambiguous and were likely misinterpreted by the jury to relieve the State of its burden of proving every element of the crime beyond a reasonable doubt. Sarausad v. Porter, 479 F. 3d 671 (2007). We disagree. Because the Washington courts reasonably applied our precedent to the facts of this case, we reverse the judgment below.
I
A
The driveby shooting was the culmination of a gang dispute between the 23d Street Diablos, of which Cesar Sarausad was a member, and the Bad Side Posse, which was headquartered at Ballard High School in Seattle, Washington. A member of the Diablos, Jerome Reyes, had been chased from Ballard by members of the Bad Side Posse, so the Diablos decided to go “to Ballard High School to show that the Diablos were not afraid” of the rival gang. App. to Pet. for Cert. 235a. The Diablos started a fight with the Bad Side Posse, but left quickly after someone indicated that *183 police were nearby. They went to a gang member’s house, still angry because the Bad Side Posse had “called [them] weak.” Tr. 2660-2661. Brian Ronquillo retrieved a handgun, and the gang decided to return to Ballard and “get [their] respect back.” Id., at 2699.
Sarausad drove, with Ronquillo in the front passenger seat and Reyes and two other Diablos in the back seat. En route, someone in the car mentioned “‘capping’” the Bad Side Posse, and Ronquillo tied a bandana over the lower part of his face and readied the handgun. Sarausad v. State, 109 Wash. App. 824, 844, 39 P. 3d 308, 319 (2001). Shortly before reaching the high school, a second car of Diablos pulled up next to Sarausad’s car and the drivers of the two cars talked briefly. Sarausad asked the other driver, “ ‘Are you ready?’ ” id., at 844-845, 39 P. 3d, at 319, and then sped the rest of the way to the high school. Once in front of the school, Sarausad abruptly slowed to about five miles per hour while Ronquillo fired 6 to 10 shots at a group of students standing in front of it. Id., at 831, 39 P. 3d, at 312. Sarausad “saw everyone go down,” Tr. 2870, and then sped away, 109 Wash. App., at 832, 39 P. 3d, at 313. The gunfire killed one student; another student was wounded when a bullet fragment struck his -leg. Id., at 831-832, 39 P. 3d, at 312-313.
B
Sarausad, Ronquillo, and Reyes were tried for the first-degree murder of Melissa Fernandes, the attempted first-degree murders of Ryan Lam and Tam Nguyen, and the second-degree assault of Brent Mason. Sarausad and Reyes, who were tried as accomplices, argued at trial that they could not have been accomplices to murder because they “had no idea whatsoever that Ronquillo had armed himself for the return trip.” Id., at 832, 39 P. 3d, at 313. They claimed that they expected, at most, another fistfight with the Bad Side Posse and were “totally and utterly dismayed when Ronquillo started shooting.” Ibid.
*184 Sarausad’s counsel, in particular, argued that there was no evidence that Sarausad expected anything more than that the two gangs “would exchange insults, and maybe, maybe get into a fight.” Tr. 1151. Sarausad testified that he considered only the “possibility of a fight,” id., at 2799, but never the possibility of a shooting, 109 Wash. App., at 832, 39 P. 3d, at 313. During closing arguments, Sarausad’s attorney again argued that the evidence showed only that Sarausad was “willing to fight them the way they fought them the first time. And that is by pushing and shoving and more tough talk.” App. 81. That was not sufficient, the attorney argued, to find that “Cesar [Sarausad] had knowledge that his assistance would promote or facilitate the crime of premeditated murder.” Id., at 83. Sarausad’s attorney also explained to the jury that knowledge of just any crime, such as knowledge that criminal assistance would be rendered after the shooting, would be insufficient to hold Sarausad responsible as an accomplice to murder because “Accomplice liability requires that one assists with knowledge, that their actions will promote or facilitate the commission of the crime.” Id., at 100 (emphasis added).
In response, the prosecutor focused much of her closing argument on the evidence of Sarausad’s knowledge of a shooting. He had “slowed down before the shots were fired, stayed slowed down until the shots were over and immediately sped up.” Id., at 39. “There was no hesitation, there was no stopping the car. There was no attempt for Mr. Sarausad to swerve his car out of the way so that innocent people wouldn’t get shot.” Id., at 40. She also argued that Sarausad knew when he drove back to the school that his gang’s “fists didn’t work, the pushing didn’t work, the flashing of the signs, the violent altercation didn’t work” because the Bad Side Posse still “laughed at them, they called them weak, they called them nothing.” Id., at 44. So, “[w]hen they rode down to Ballard High School that last *185 time,... [t]hey knew they were there to commit a crime, to disrespect the gang, to fight, to shoot, to get that respect back. A fist didn’t work, pushing didn’t work. Shouting insults at them didn’t work. Shooting was going to work. In for a dime, you’re in for a dollar.” Id., at 123-124.
At the close of trial, the jury received two instructions that directly quoted Washington’s accomplice-liability statute.[1] Instruction number 45 provided:
“You are instructed that a person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.” Id., at 16 (emphasis added).
Instruction number 46 provided, in relevant part:
“A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
“(1) solicits, commands, encourages, or requests another person to commit the crime or
“(2) aids or agrees to aid another person in planning or committing the crime.” Id., at 17 (emphasis added).
*186 During seven days of deliberations, the jury asked five questions, three of which related to the intent requirement for accomplice liability. One questioned the accomplice-liability standard as it related to the first-degree murder instructions; one questioned the standard as it related to the second-degree murder instructions; and one stated that the jury was “having difficulty agreeing on the legal definition and concept of ‘accomplice’ ” and whether a person’s “willing participation] in a group activity” makes “that person an accomplice to any crime committed by anyone in the group.” Id., at 129. In response to each question, the judge instructed the jury to reread the accomplice-liability instructions and to consider the instructions as a whole.
The jury was unable to reach a verdict as to Reyes, and the judge declared a mistrial as to him. The jury then returned guilty verdicts on all counts for Ronquillo and convicted Sarausad of the lesser included crimes of second-degree murder, attempted second-degree murder, and second-degree assault.
C
On appeal, Sarausad argued that because the State did not prove that he had intent to kill, he could not be convicted as an accomplice to second-degree murder under Washington law. The Washington Court of Appeals affirmed his convictions, explaining that under Washington law, an accomplice must have “general knowledge” that the crime will occur, but need not have the specific intent required for that crime’s commission. App. to Pet. for Cert. 259a. The court referred to accomplice liability as “a theory of criminal liability that in Washington has been reduced to the maxim, ‘in for a dime, in for a dollar.’” Id., at 235a. The Washington Supreme Court denied discretionary review. State v. Ronquillo, 136 Wash. 2d 1018, 966 P. 2d 1277 (1998).
Shortly thereafter, the Washington Supreme Court clarified in an unrelated criminal case that “in for a dime, in for a dollar” is not the best descriptor of accomplice liability under *187 Washington law because an accomplice must have knowledge of “the crime” that occurs. State v. Roberts, 142 Wash. 2d 471, 509-510, 14 P. 3d 713, 734-735 (2000). Therefore, an accomplice who knows of one crime — the dime — is not guilty of a greater crime — the dollar — if he has no knowledge of that greater crime. It was error, then, to instruct a jury that an accomplice’s knowledge of “ ‘a crime’ ” was sufficient to establish accomplice liability for “‘the crime.’” Ibid.[2] The Washington Supreme Court limited this decision to instructions containing the phrase “a crime” and explicitly reaffirmed its precedent establishing that jury instructions linking an accomplice’s knowledge to “the crime,” such as the instruction used at Sarausad’s trial, comport with Washington law. Id., at 511-512, 14 P. 3d, at 736 (discussing State v. Davis, 101 Wash. 2d 654, 656, 682 P. 2d 883, 884 (1984)). An instruction that references “the crime” “copie[s] exactly the language from the accomplice liability statute” and properly hinges criminal punishment on knowledge of “the crime” for which the defendant was charged' as an accomplice. 142 Wash. 2d, at 512, 14 P. 3d, at 736.
D
Sarausad next sought postconviction relief from the Washington courts. He argued that although the accomplice-liability instruction used at his trial complied with Roberts, *188 “an additional clarifying instruction should have been given” because the prosecutor may have confused the jury by improperly arguing that he had been “ ‘in for a dime, in for a dollar.’ ” Sarausad, 109 Wash. App., at 829, 39 P. 3d, at 311. Therefore, he argued, the jury may have convicted him as an accomplice to second-degree murder based solely on his admission that he anticipated that an assault would occur at Ballard High School.
The Washington Court of Appeals reexamined the trial record in its entirety in light of Roberts, see 109 Wash. App., at 834, 39 P. 3d, at 313-314, but found no error requiring correction. According to the court, the prosecutor’s closing argument in its entirety did not convey “that the jury could find Sarausad guilty as an accomplice to murder if he had the purpose to facilitate an offense of any kind whatsoever, even a shoving match or fist fight.” Id., at 840, 39 P. 3d, at 317. The prosecutor’s “‘in for a dime, in for a dollar’” illustration also did not convey that standard. Id., at 842-843, 39 P. 3d, at 318. The court explained that in every situation but one, the prosecutor clearly did not use that phrase to argue that Sarausad could be convicted of murder if he intended only a fistfight. Instead, she used it to convey a “gang mentality” that requires a wrong to the gang to be avenged by any means necessary. Id., at 842, 39 P. 3d, at 318. Thus, according to the prosecutor, when a fight did not work, Sarausad knew that a shooting was required to avenge his gang. See ibid.
There was one “in for a dime, in for a dollar” hypothetical in the prosecutor’s closing that did not convey this gang-mentality meaning and thus, the court recognized, “may or may not be problematic under Roberts” depending on how it was interpreted. Id., at 843, 39 P. 3d, at 318.[3] The court *189 concluded that it did not need to decide whether the hypothetical was improper under state law because, even if it was, it did not prejudice Sarausad. Sarausad’s jury was properly instructed and “the prosecutor made it crystal clear to the jury that the State wanted Sarausad found guilty... because he knowingly facilitated the drive-by shooting and for no other reason.” Id., at 843-844, 39 P. 3d, at 319.
Sarausad sought discretionary postconviction review from the Supreme Court of Washington. In denying his petition, the court held that “the trial court correctly instructed the jury” that knowledge of the particular crime committed was required. App. to Pet. for Cert. 191a. The court also found that no prejudicial error resulted from the prosecutor’s potentially improper hypothetical. Id., at 192a. “[Whatever the flaws in the argument, the prosecutor properly focused on Mr. Sarausad’s knowing participation in the shooting, not in some lesser altercation.” Ibid.
E
Sarausad filed this petition for a writ of habeas corpus in Federal District Court pursuant to 28 U. S. C. §2254. The District Court granted the petition, finding “ample evidence that the jury was confused about what elements had to be established in order for [Sarausad] to be found guilty of second degree murder and second degree attempted murder.” App. to Pet. for Cert. 129a. The Court of Appeals for the Ninth Circuit affirmed, finding that the state postconviction court unreasonably applied this Court’s decisions in Estelle *190 v. McGuire, 502 U. S. 62 (1991), Sandstrom v. Montana, 442 U. S. 510 (1979), and In re Winship, 397 U. S. 358 (1970), in affirming Sarausad’s conviction in spite of ambiguous jury instructions and the “ ‘reasonable likelihood that the jury ... applied the challenged instruction in a way’ that violates the Constitution.” 479 F. 3d, at 683 (quoting Estelle, supra, at 72). The court denied rehearing en banc over the dissent of five judges. Sarausad v. Porter, 503 F. 3d 822 (2007). We granted certiorari, 552 U. S. 1256 (2008), and now reverse.
II
Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief on a claim “adjudicated on the merits” in state court only if the decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U. S. C. § 2254(d)(1). Where, as here, it is the state court’s application of governing federal law that is challenged, the decision “‘must be shown to be not only erroneous, but objectively unreasonable.’” Middleton v. McNeil, 541 U. S. 433, 436 (2004) (per curiam) (quoting Yarborough v. Gentry, 540 U. S. 1, 5 (2003) (per curiam))) see also Schriro v. Landrigan, 550 U. S. 465, 473 (2007) (“The question under AEDPA is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable — a substantially higher threshold”).
Our habeas precedent places an “especially heavy” burden on a defendant who, like Sarausad, seeks to show constitutional error from a jury instruction that quotes a state statute. Henderson v. Kibbe, 431 U. S. 145, 155 (1977). Even if there is some “ambiguity, inconsistency, or deficiency” in the instruction, such an error does not necessarily constitute a due process violation. Middleton, supra, at 437. Rather, the defendant must show both that the instruction was am *191 biguous and that there was “ ‘a reasonable likelihood’ ” that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. Estelle, supra, at 72 (quoting Boyde v. California, 494 U. S. 370, 380 (1990)). In making this determination, the jury instruction “ ‘may not be judged in artificial isolation,’ but must be considered in the context of the instructions as a whole and the trial record.” Estelle, supra, at 72 (quoting Cupp v. Naughten, 414 U. S. 141, 147 (1973)). Because it is not enough that there is some “slight possibility” that the jury misapplied the instruction, Weeks v. Angelone, 528 U. S. 225, 236 (2000), the pertinent question “is ‘whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,’ ” Estelle, supra, at 72 (quoting Cupp, supra, at 147).
A
The Washington courts reasonably concluded that the trial court’s instruction to the jury was not ambiguous. The instruction parroted the language of the statute, requiring that an accomplice “in the commission of the crime” take action “with knowledge that it will promote or facilitate the commission of the crime” App. 16-17 (emphasis added); Wash. Rev. Code §§ 9A.08.020(2)(c), (3)(a) (2008). It is impossible to assign any meaning to this instruction different from the meaning given to it by the Washington courts. By its plain terms, it instructed the jury to find Sarausad guilty as an accomplice “in the commission of the [murder]” only if he acted “with knowledge that [his conduct] will promote or facilitate the commission of the [murder].” App. 16 — 17.[4] Be *192 cause the conclusion reached by the Washington courts that the jury instruction was unambiguous was not objectively unreasonable, the Court of Appeals’ 28 U. S. C. § 2254(d)(1) inquiry should have ended there.[5]
B
Even if we agreed that the instruction was ambiguous, the Court of Appeals still erred in finding that the instruction *193 was so ambiguous as to cause a federal constitutional violation, as required for us to reverse the state court’s determination under AEDPA, 28 U. S. C. § 2254(d). The Washington courts reasonably applied this Court’s precedent when they determined that there was no “reasonable likelihood” that the prosecutor’s closing argument caused Sarausad’s jury to apply the instruction in a way that relieved the State of its burden to prove every element of the crime beyond a reasonable doubt. The prosecutor consistently argued that Sarausad was guilty as an accomplice because he acted with knowledge that he was facilitating a driveby shooting. Indeed, Sarausad and Reyes had admitted under oath that they anticipated a fight, Tr. 2671, 2794, and yet the prosecutor never argued that their admission was a concession of accomplice liability for murder. She instead argued that Sarausad knew that a shooting was intended, App. 123, because he drove his car in a way that would help Ronquillo “fire those shots,” id., at 39. The closing argument of Sarausad’s attorney also homed in on the key legal question: He challenged the jury to look for evidence that Sarausad “had knowledge that his assistance would promote or facilitate the crime of premeditated murder” and argued that no such evidence existed. Id., at 83.
Put simply, there was no evidence of ultimate juror confusion as to the test for accomplice liability under Washington law. Rather, the jury simply reached a unanimous decision that the State had proved Sarausad’s guilt beyond a reasonable doubt. Indeed, every state and federal appellate court that reviewed the verdict found that the evidence supporting Sarausad’s knowledge of a shooting was legally sufficient to convict him under Washington law. 479 F. 3d, at 677-683; Sarausad, 109 Wash. App., at 844-845, 39 P. 3d, at 319. Given the strength of the evidence supporting the conviction, along with the jury’s failure to convict Reyes — who also had been charged as an accomplice to murder and also had admitted knowledge of a possible fight — it was not objectively *194 unreasonable for the Washington courts to conclude that the jury convicted Sarausad only because it believed that he, unlike Reyes, had knowledge of more than just a fistfight. The reasoning of the Court of Appeals, which failed to review the state courts’ resolution of this question through the deferential lens of AEDPA, does not convince us otherwise.
First, the Court of Appeals found that the evidence of Sarausad’s knowledge of the shooting was so “thin” that the jury must have incorrectly believed that proof of such knowledge was not required. 479 F. 3d, at 692-693. That conclusion, however, is foreclosed by the Court of Appeals’ own determination that the evidence was sufficient for a rational jury to reasonably infer that Sarausad knowingly facilitated the driveby shooting. As explained above, the Court of Appeals acknowledged that the evidence showed that Ronquillo, while seated in Sarausad’s front passenger seat, tied a bandana over the lower part of his face and pulled out a gun. Id., at 681. There also was evidence that Sarausad then asked the Diablos in the other car, “ Are you ready?’ ” before driving to the school and “slow[ing] his ear in front of the school in a manner that facilitated a drive-by shooting.” Ibid. Other gang members testified to prior knowledge of the gun and to discussing the shooting as an option during the gang meeting held between trips to Ballard High School. Id., at 682. There also was testimony from Sarausad that he suspected that members of the Bad Side Posse would be armed when they returned to Ballard High School, ibid., making it reasonable to conclude that Sarausad would expect his gang to be similarly prepared for the confrontation. There was nothing “thin” about the evidence of Sarausad’s guilt.
Second, the Court of Appeals faulted the prosecutor for arguing “clearly and forcefully” for an “ ‘in for a dime, in for a dollar’” theory of accomplice liability. Id., at 693. But the Washington Court of Appeals conducted an in-depth analysis of the prosecutor’s argument and reasonably found *195 that it contained, at most, one problematic hypothetical. Sarausad, supra, at 842-843, 39 P. 3d, at 318-319. The state court’s conclusion that the one hypothetical did not taint the proper instruction of state law was reasonable under this Court’s precedent, which acknowledges that “arguments of counsel generally carry less weight with a jury than do instructions from the court.” Boyde, 494 U. S., at 384. On habeas review, the Court of Appeals should not have dissected the closing argument and exaggerated the possible effect of one hypothetical in it. There was nothing objectively unreasonable about the Washington courts’ resolution of this question.[6]
Third, and last, the Court of Appeals believed that the jury’s questions “demonstrated substantial confusion about what the State was required to prove.” 479 F. 3d, at 693. Sarausad focuses special attention on this factor, arguing that it was the “failure to remedy” this confusion that sets this case apart from previous decisions and establishes that the jury likely “did not understand accomplice liability” when it returned its verdict. Brief for Respondent 29, 31. But this Court has determined that the Constitution generally requires nothing more from a trial judge than the type of *196 answers given to the jury here. Weeks, 528 U. S., at 234. Where a judge “respond[s] to the jury’s question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry,” and the jury asks no followup question, this Court has presumed that the jury fully understood the judge’s answer and appropriately applied the jury instructions. Ibid.
Under this established standard, it was not objectively unreasonable for the state court to conclude that Sarausad’s jury received the answers it needed to resolve its confusion.[7] Its questions were spaced throughout seven days of deliberations, involved different criminal charges, and implicated the interrelation of several different jury instructions. The judge pinpointed his answers to the particular instructions responsive to the questions and those instructions reflected state law. Under these circumstances, the state court did not act in an objectively unreasonable manner in finding that the jury knew the proper legal standard for conviction.
*197 III
Because the state-court decision did not result in an “unreasonable application of . . . clearly established Federal law,” 28 U. S. C. § 2254(d)(1), the Court of Appeals erred in granting a writ of habeas corpus to Sarausad. The judgment below is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Washington’s accomplice-liability statute provides, in pertinent part:
“A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when:
“He is an accomplice of such other person in the commission of the crime.
“A person is an accomplice of another person in the commission of a crime if... [w]ith knowledge that it will promote or facilitate the commission of the crime, he
“(i) solicits, commands, encourages, or requests such other person to commit it; or
“(ii) aids or agrees to aid such other person in planning or committing it.” Wash. Rev. Code §§9A.08.020(l)-(3) (2008) (internal numbering omitted).

 The instruction found faulty in Roberts provided in full:
“You are instructed that a person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of a crime.
“A person is an accomplice in the commission of a crime, whether present at the time of its commission or not, if, with knowledge that it will promote or facilitate its commission, he either:
“(a) solicits, commands, encourages, or requests another person to commit the crime; or
“(b) aids another person in planning or committing the crime.” 142 Wash. 2d, at 488-489,14 P. 3d, at 724 (emphasis added).

 The prosecutor had argued in the hypothetical that an accomplice who knows that he is helping someone assault a victim bears responsibility if the victim is killed. The hypothetical stated in full:
“Let me give you a good example of accomplice liability. A friend comes up to you and says, ‘Hold this person’s arms while I hit him.’ You *189 say, ‘Okay, I don’t like that person, anyway.’ You hold the arms. The person not only gets assaulted, he gets killed. You are an accomplice and you can’t come back and say, “Well, I only intended this much damage to happen.’ Your presence, your readiness to assist caused the crime to occur and you are an accomplice. The law in the State of Washington says, if you’re in for a dime, you’re in for a dollar. If you’re there or even if you’re not there and you’re helping in some fashion to bring about this crime, you are just as guilty.” App. 38.

 The dissent would reverse the Washington state courts based on the alleged confusion in Washington courts, and specifically in the Washington Court of Appeals on direct review, about the meaning of the Washington accomplice-liability statute. Post, at 198-200 (opinion of Souter, J.). But the confusion in the Court of Appeals over the application of the statute involved the related, but legally distinct, question whether an accom *192 plice is required to share the specific intent of the principal actor under Washington law. On direct appeal, respondent argued that he should not have been convicted as an accomplice to murder because he did not have the specific intent to kill. The Washington Court of Appeals rejected that argument because “it was not necessary for the State to prove Sarausad knew Ronquillo had a gun, or knew that there was a potential for gunplay that day” under Washington law, App. to Pet. for Cert. 266a, where “accomplice liability predicates criminal liability on general knowledge of a crime, rather than specific knowledge of the elements of the principal’s crime,” id., at 259a. But the Washington Court of Appeals never held that knowledge of a completely different crime, such as assault, would be sufficient under Washington law for accomplice liability for murder. See id., at 258a-259a; see also In re Domingo, 155 Wash. 2d 356, 367-368, 119 P. 3d 816, 822 (2005) (“[Njeither Davis nor any of this court’s decisions subsequent to Davis approves of the proposition that accomplice liability attaches for any and all crimes committed by the principal so long as the putative accomplice knowingly aided in any one of the crimes”). In other words, the Court of Appeals had evaluated whether respondent’s conviction required a specific intent versus a general intent to kill, not whether it required knowledge of a murder versus knowledge of an assault — the issue under review here. Thus, the confusion in the state courts referenced by the dissent has no bearing on the question presented in this appeal, and does not support the dissent’s argument that the jury instruction in question was ambiguous.

 To the extent that the Court of Appeals attempted to rewrite state law by proposing that the instruction should have included “an explicit statement that an accomplice must have knowledge of... the actual crime the principal intends to commit,” 479 F. 3d 671, 690 (CA9 2007), it compounded its error. The Washington Supreme Court expressly held that the jury instruction correctly set forth state law, App. to Pet. for Cert. 191a, and we have repeatedly held that “it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.” Estelle v. McGuire, 502 U. S. 62, 67-68 (1991).

 The dissent accuses us of downplaying this ambiguous hypothetical, arguing that it is so rife with improper meaning that it “infect[ed] every further statement bearing on accomplice law the prosecutor made,” post, at 202, and ensured that the jury misinterpreted the trial court’s properly phrased instruction. We disagree. The proper inquiry is whether the state court was objectively unreasonable in concluding that the instruction (which precisely tracked the language of the accomplice-liability statute) was not warped by this one-paragraph hypothetical in an argument and rebuttal spanning 31 pages of the joint appendix. The state court’s conclusion was not unreasonable. The hypothetical was presented during closing arguments, which juries generally “vie[w] as the statements of advocates” rather than “as definitive and binding statements of the law,” Boyde v. California, 494 U. S. 370, 384 (1990), and which, as a whole, made clear that the State sought a guilty verdict based solely on Sarausad’s “knowledge that his assistance would promote or facilitate the crime of premeditated murder,” App. 83; see also id., at 123-124.

 The dissent argues that we “sideste[p] the thrust of this record” by finding that the trial judge’s answers to the jury’s questions were satisfactory. Post, at 205. But our decision cannot turn on a de novo review of the record or a finding that the answers were “the best way to answer jurors’ questions,” ibid. On federal habeas review, this Court’s inquiry is limited to whether the state court violated clearly established federal law when it held that the jury applied the correct standard, in light of the answers given to its questions. See 28 U. S. C. § 2254(d)(1). On that issue, the state court was not objectively unreasonable; the jury's questions were answered in a manner previously approved by this Court, and they consistently referred the jury to the correct standard for accomplice liability in Washington. The dissent also ignores the important fact that the jury convicted Ronquillo of first-degree murder, convicted respondent of second-degree murder, and failed to reach an agreement on Reyes’ guilt, causing a mistrial on the first-degree murder charge pending against him. The jury’s assignment of culpability to two of the codefendants, versus its deadlock over a third who, like respondent, conceded knowledge of an assault, demonstrates that the jury understood the legal significance of each defendant’s relative knowledge and intent with respect to the murder.