NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2463
_____

CLIFFORD MURRAY,

Appellant

v.

DAVID DIGUGLIELMO; THE DISTRICT
ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE COMMONWEALTH
OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-09-04960)
Honorable C. Darnell Jones, II, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
October 24, 2014

BEFORE: FUENTES, GREENBERG, and COWEN, Circuit Judges

(Filed: November 10, 2014)
_____

OPINION*
_____

GREENBERG, Circuit Judge.
_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
 does not constitute binding precedent.

## I.  INTRODUCTION

A jury convicted appellant Clifford Murray in a Pennsylvania state court of first-degree murder and other offenses.  Before he completed his post-conviction state court challenges to his conviction, he filed a petition for a writ of habeas corpus in the District Court contending that his trial counsel had been constitutionally ineffective.  In particular, he maintained that the jury instructions improperly indicated that he could be convicted of that offense based on his accomplice's specific intent to kill even if he, Murray, did not have such an intent.  The District Court proceedings were held in abeyance until completion of Murray's unsuccessful state post-conviction proceedings and then were activated but Murray again was unsuccessful.  He then appealed to this Court.  We now hold that the Pennsylvania Superior Court, the last state court to consider his contention, did not act unreasonably in concluding that the jury charge, when viewed as a whole, properly informed the jury that Murray had to have a specific intent to kill the victim to be convicted of first-degree murder.  Therefore, Murray is not entitled to habeas corpus relief and we will affirm the order of the District Court denying Murray's petition for a writ of habeas corpus.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 1981, Murray was arrested for the homicide of Joseph Lewis Porter, in Philadelphia on January 28, 1981.  Porter had sustained seven gunshot wounds, five from .32 caliber bullets and two from .38 caliber bullets.  The .32 caliber bullets hit Porter's upper body, including his chest, and the .38 caliber bullets hit Porter's lower body.  Two

2

eyewitnesses identified Murray and another man, William Hunter, as the shooters. After

his arrest, Murray provided police with a signed written confession, in which he stated

that when he saw Porter, Hunter handed him, Murray, a .38 caliber gun and said, "Come

on. We are going to get him." App. 454-55. According to the confession, Hunter then

shot Porter repeatedly with a .32 caliber gun, while Murray shot him with the .38 caliber

gun. Id. 454.

Murray was indicted and tried in the Philadelphia County Court of Common Pleas

in November 1983 on charges of first- and third-degree murder, voluntary manslaughter,

criminal conspiracy, and possession of an instrument of crime. In his closing argument,

the prosecutor described the distinction between first- and third-degree murder as

follows:

> Now, the difference between first- and third-degree murder is found
> in the intent of the actor, . . . the intent of the person who does the killing.
>
> If you specifically intend to kill another person, you are guilty of
> first-degree murder. If you specifically intend only to cause serious bodily
> injury to another person, but death results anyway, you are guilty of third-
> degree murder. That, pure and simple is the difference between the two
> degrees.
>
> Now, an example of third-degree murder might be getting into an
> argument with someone and you shoot him in the leg. Now clearly you
> don't intend to kill anybody when you shoot him in the leg, but, let's say it
> severs the major artery in the leg and the deceased bleeds to death before
> he's treated by a physician. That is third-degree murder, because you
> intended to hurt him bodily, but didn't intend to kill him, but death results
> anyway. That is third-degree murder.
>
> It is not third-degree murder when you shoot someone seven times, -
> - seven times. When you shoot someone seven times, you intend to kill
> him. Now, some of you may be thinking right now, well, if we believe that
> this defendant had the .38, he only shot the deceased twice, and he didn't

3

shoot him in the chest. That was inflicted by the .32. Well, the defendant is also charged with conspiracy in this case. He also is an accomplice of the person that he commits the crime with. And the law is that if you conspire with someone, if you make a [. . . .][1] to commit an illegal act, then you're guilty not only for what you do, but also for the other guy. You are responsible for everything.

So if you find that Clifford Murray and Willie Hunter shot the deceased together, then Clifford Murray is responsible for the shots to the chest and the other four shots that came from the .32 as well as the two that he fired into the deceased's body. That makes it a case of first-degree murder, ladies and gentlemen. Seven gunshots makes it a case of first-degree murder . . . .

Id. 670-72.

Before providing this description of the law to the jurors, the prosecutor cautioned them that the judge "is the only word on the law in this Courtroom" and that they should "disregard" any part of his discussion of first- versus third-degree murder that conflicts with what the judge instructs them. Id. 638. The judge likewise instructed the jury to follow the law as he gives it, irrespective of anything the attorneys may have said during their closing arguments. Id. 679.

The judge instructed the jury as to the "crimes" of first-degree murder and third-degree murder. As to first-degree murder, the judge instructed:

Now, you may find the defendant guilty of first-degree murder if you are satisfied that the following four elements have been proven by the Commonwealth beyond a reasonable doubt:

First, that Joseph Lewis Porter is dead.

Second, that the defendant or an accomplice killed him.

_____

[1] The omitted word is not clear in the transcript but Murray indicates in his brief that the word is "conspiracy" which fits in the context. In any event, the omission is not material to the Court's resolution of the legal issues before it.

4

Third, that the killing was committed by a person with a specific intent to kill the victim.

And fourth, that the killing was committed with malice.

Id. 683.  The judge's instructions on third-degree murder mirrored these except as to the third element:  "Third, that although the act of the defendant or his accomplice resulted in the death of Joseph Lewis Porter, no intent to take human life existed or could reasonably be inferred, but, rather, an intention existed merely to inflict grievous bodily harm, and yet as a result of the infliction of the injury, death resulted."  Id. 685-86.

Later, the judge gave the following instructions with respect to accomplice liability and criminal conspiracy:

It is the law in this Commonwealth that a person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable or both.  A person is legally accountable for the conduct of another person in the commission of an offense when with the intent of promoting or facilitating the commission of the offense, he, one, solicits the other person to commit it, or, two, aids the other person in planning or committing it, or, three, agrees or attempts to aid such other person in planning or committing it.

. . . .

Now, a person is guilty of criminal conspiracy if with the intent of promoting or facilitating the commission of a crime, he agrees, or plans with such other person or persons that they or one or more of them will engage in conduct which constitutes the crime, or will attempt or solicit to commit the crime, or agrees to aid such other person or persons in planning the crime.

. . . .

It must be shown that a conspirator acted with the intent to commit a crime, in this case, murder, and that an overt act was committed by a co-

5

conspirator or pursuant to the conspiracy. The overt act alleged is that they did possess a gun.

Id. 709-12.

The jury found Murray guilty of first-degree murder, criminal conspiracy to commit murder, and possession of an instrument of crime. After a tangled procedural history, the Pennsylvania Superior Court affirmed Murray's convictions on February 14, 2005, and the Pennsylvania Supreme Court denied Murray's petition for permission to appeal. Murray filed a timely petition for post-conviction relief in the Pennsylvania courts, arguing, among other things, that his trial counsel provided ineffective assistance in failing to object to the jury charge on first-degree murder, which suggested that Murray could be convicted based on his accomplice's specific intent to kill. After an evidentiary hearing, the court denied the petition, and Murray appealed. On November 3, 2011, the Pennsylvania Superior Court affirmed the denial, reasoning that the jury instructions as a whole adequately informed the jury that Murray himself had to possess a specific intent to kill to be convicted of first-degree murder. The Pennsylvania Supreme Court denied Murray's petition for permission to appeal, and Murray did not seek certiorari from the United States Supreme Court.

On October 29, 2009, while the state court proceedings were still pending, Murray filed the present petition for a writ of habeas corpus in the District Court reiterating the claim that trial counsel had been ineffective when he failed to object to the first-degree murder instructions.[2] The Court, adopting a magistrate judge's report and

---

[2] He also advanced other contentions, but we are not concerned with them on this appeal.

recommendation, denied Murray's petition without holding an evidentiary hearing as it concluded that the Pennsylvania Superior Court acted reasonably in rejecting Murray's challenge to the first-degree murder instructions. It nevertheless granted a certificate of appealability limited to that issue, and Murray has appealed.[3]

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254, and we have jurisdiction based on the District Court's certificate of appealability pursuant to 28 U.S.C. §§ 1291 and 2253. See Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir.), cert. denied, 134 S.Ct. 2700 (2014). Where, as here, the District Court did not conduct an evidentiary hearing, we review its decision de novo. Id.

Although our review of the District Court's decision is de novo, we accord "considerable deference," to the decision of the Pennsylvania Superior Court. See Branch v. Sweeney, 758 F.3d 226, 232 (3d Cir. 2014); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); see also Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2241-2254, where, as here, a state court has adjudicated a claim on the merits and the claim does not rest on a challenge to state court factual findings, a habeas corpus petitioner may prevail on the claim only if he shows that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

---

[3] Appellees do not contend the Murray has not exhausted his state court remedies or that his ineffective counsel claim is procedurally barred.

by the Supreme Court of the United States." 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519 (2000). To qualify as such an "unreasonable application" of Supreme Court precedent, the state court decision must have been "'objectively unreasonable,' not merely wrong; 'clear error' will not suffice." White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75–76, 123 S.Ct. 1166, 1175 (2003)). The petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)). In considering whether a petitioner has made this showing, a court must recognize that the more general the rule that the Supreme Court articulates, the more leeway a state court has in its application of that rule to the facts of a particular case. See Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149 (2004)). Furthermore, the state court need not cite or even be aware of Supreme Court precedent for its decision to warrant the deference under the AEDPA. See Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365 (2002); Priester v. Vaughn, 382 F.3d 394, 397-98 (3d Cir. 2004).

## III.    DISCUSSION

Murray argues that his trial counsel was constitutionally ineffective in failing to object to the jury charge on first-degree murder as Murray contends that the charge violated due process of law by relieving the Commonwealth from its burden to prove that he personally intended to kill Porter. To establish a claim of ineffective assistance of

8

counsel, a petitioner must demonstrate (1) that counsel's performance deficiently "fell below an objective standard of reasonableness" and (2) that this deficient performance prejudiced the petitioner's defense. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984). But counsel does not act ineffectively if he does not present an argument or objection that lacks merit. See Williams v. Beard, 637 F.3d 195, 225 n.23 (3d Cir. 2011); Johnson v. Tennis, 549 F.3d 296, 301 (3d Cir. 2008). In passing on a claim of ineffective assistance of counsel, we must consider counsel's representation of the defendant as of the time of that representation. See Branch, 758 F.3d at 235.

By the time of Murray's trial, the Supreme Court had held that a jury instruction violates due process if it relieves the prosecution from having to prove an essential element of the crime, such as the defendant's mental state. See Sandstrom v. Montana, 442 U.S. 510, 520-21, 99 S.Ct. 2450, 2457-58 (1979) (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970)). Moreover, by the time of Murray's trial, the Pennsylvania Supreme Court had made clear that an individual could not be convicted of first-degree murder in the absence of proof that he personally possessed a specific intent to kill the victim. See Commonwealth v. Bachert, 453 A.2d 931, 935 (Pa. 1982) ("[T]he requisite mental state must be proved beyond a reasonable doubt to be one which the accomplice harbored and cannot depend upon proof of intent to kill only in the principal.").

On this basis, Murray contends that the jury charge on first-degree murder improperly permitted the jurors to convict him based on Hunter's intent, rather than his own intent, by instructing them that either "the defendant or the accomplice" had to kill

9

Porter and that the killing had to be "committed by <u>a person</u> with a specific intent to kill the victim." App. 683 (emphasis added). Though this argument has surface appeal, the Supreme Court has indicated that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437, 124 S.Ct. 1830, 1832 (2004). "Rather, the [petitioner] must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190-91, 129 S.Ct. 823, 831 (2009) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991)); <u>see</u> <u>Williams v. Beard</u>, 637 F.3d at 223. The challenged jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>Waddington</u>, 555 U.S. at 191, 129 S.Ct. at 832 (quoting <u>Estelle</u>, 502 U.S. at 72, 112 S. Ct. at 482).

In the state post-conviction relief proceedings, the Pennsylvania Superior Court, the last state court to consider the matter on the merits, acknowledged that, considered in isolation, the first-degree murder charge misstated Pennsylvania law. It concluded, however, that Murray's counsel was not ineffective in failing to object to the charge because the instructions as a whole adequately advised the jury that Murray had to possess a specific intent to kill in order to be convicted of first-degree murder. App. 791-93 (citing <u>Commonwealth v. Daniels</u>, 963 A.2d 409, 430-32 (Pa. 2009); <u>Commonwealth v. Speight</u>, 854 A.2d 450, 460-61 (Pa. 2004)). In particular, the court emphasized that the jury instructions on both accomplice liability and criminal conspiracy required that

10

Murray had to have acted with the intent of promoting or facilitating the homicide to be convicted. App. 791-92.

The Commonwealth argues that our analysis need go no further because a federal habeas corpus court may not "'reexamine state court determinations on state-law questions,'" and, accordingly, we are "[b]ound by the state court's determination that the instruction at issue comported with state law." Priester, 382 F.3d at 402 (quoting Estelle, 502 U.S. at 66-67, 112 S.Ct. at 480). However, a determination of whether there was a reasonable likelihood that the jury would apply the instruction so as to relieve the Commonwealth of its burden of proving an essential element of the crime presents a federal due process question that is not answered by the state court's interpretation of the instructions. See Francis v. Franklin, 471 U.S. 307, 315-16, 105 S.Ct. 1965, 1971-72 (1985); Sandstrom, 442 U.S. at 516-17, 99 S.Ct. at 2455-56; Smith v. Horn, 120 F.3d 400, 408, 413 (3d Cir. 1997).

Nevertheless, the Superior Court's ruling still warrants deference under the AEDPA, and we conclude that it did not constitute an unreasonable application of clearly established Supreme Court precedent. Murray contends that the accomplice liability and criminal conspiracy instructions could not have remedied the deficiency in the first-degree murder charge because the jurors might have understood these instructions to mean that they could convict him of first-degree murder if they found him complicit in a third-degree murder. This argument fails.

In Waddington, a habeas corpus petitioner argued that a Washington state jury may have convicted him of second-degree murder based only on his complicity in an

11

assault. See 555 U.S. at 188, 129 S.Ct. at 830. The Supreme Court rejected this argument, relying on the language of the accomplice liability instruction that an accomplice "in the commission of the crime" must have acted "with knowledge that it will promote or facilitate the commission of the crime." Id. at 191, 129 S.Ct. at 832 (emphasis in original). The Court held that the Washington state courts reasonably determined the instruction to be unambiguous given that its use of the definite article "the" made clear that the jury could convict the petitioner as an accomplice to murder only if it found that he acted with knowledge that his conduct would aid in the murder. See id. at 191-92, 129 S.Ct. at 832.

The accomplice liability charge in the present case similarly instructed that "[a] person is legally accountable for the conduct of another person in the commission of an offense" only if he acted "with the intent of promoting or facilitating the commission of the offense." App. 709 (emphasis added). As in Waddington, it was not objectively unreasonable for the state court to conclude that this instruction made clear that Murray could be convicted as an accomplice to first-degree murder only if he specifically intended to promote or facilitate the offense of first-degree murder. Murray asserts that first-degree murder and third-degree murder constitute the same "offense" of murder, but the judge's instructions referred to the different types of criminal homicide as distinct "crimes." Id. 682. In the circumstances, there is no meaningful distinction between the terms "the crime," as addressed in Waddington, and "the offense," the term the trial court used here in its charge. Accordingly, the Superior Court reasonably concluded that Murray's due process claim lacks merit and that his trial counsel did not provide

12

ineffective assistance in failing to object to the jury instructions. See Williams, 637 F.3d at 225 n.23.

In arguing that the jury could have been misled by the instructions as a whole, Murray relies on three of our opinions in which we held that the instructions were constitutionally defective. See Laird v. Horn, 414 F.3d 419, 426-27 (3d Cir. 2005); Everett v. Beard, 290 F.3d 500, 512 (3d Cir. 2002); Smith, 120 F.3d at 411-14. We may not, however, "'consul[t] [our] own precedents, rather than those of [the Supreme Court], in assessing' a habeas claim governed by § 2254." White, 134 S.Ct. at 1702 n.2 (quoting Parker v. Matthews, 132 S.Ct. 2148, 2155 (2012) (per curiam)); see Renico v. Lett, 559 U.S. 766, 779, 130 S.Ct. 1855, 1866 (2010). None of our opinions that Murray cites "purport to reflect clearly established law as set out in [the Supreme Court's] holdings," Parker, 132 S.Ct. at 155 (emphasis omitted), as none of them employed the deference owed under the AEDPA to state court adjudications on the merits. See Laird, 414 F.3d at 423, 428; Everett, 290 F.3d at 509; Smith, 120 F.3d at 420 & n.1 (Alito, J., dissenting). Indeed, one of the judges in Smith would have held that the instructions were not ambiguous when considered as a whole, see 120 F.3d at 423-24 (Alito, J., dissenting), and we reached a similar conclusion in a not precedential opinion that did apply AEDPA deference. See Brockington v. Vaughn, 66 F. App'x 436, 437-41 (3d Cir. 2003).

We acknowledge that the mere fact that some federal courts have applied federal law in the same way as the Superior Court in this case does not by itself establish that the state court acted reasonably, see Williams v. Taylor, 529 U.S. at 409-10, 120 S.Ct. at 1521-22, but this recognition does provide some support for a conclusion that the state

13

court's decision was not objectively unreasonable. See White, 134 S.Ct. at 1703 n.3; Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir. 2004). On the particular facts of this case, fairminded jurists could disagree about how to apply the general rule that jury instructions violate due process if there exists a "reasonable likelihood" that the jury misunderstood the instructions, considered as a whole. See Harrington, 131 S.Ct. at 786-87.

Murray finally contends that the prosecutor's closing argument created a reasonable likelihood that the jurors misapplied the instructions and convicted him of first-degree murder even if they did not believe that he personally possessed a specific intent to kill. The prosecutor's closing may have been misleading insofar as it called for the jury to find that Murray had the specific intent to kill necessary for a first-degree murder conviction on the basis of the shots that Hunter fired, without pointing to other evidence of Murray's intent so as to establish his criminal liability for Hunter's conduct. Given our conclusion, however, that the Superior Court acted reasonably in holding that the instructions were unambiguous when considered as a whole, we need not consider the effect of the prosecutor's closing on the jury.[4] See Waddington, 555 U.S. at 191-92, 129 S.Ct. at 832. Moreover, both the prosecutor and the Court told the jury to disregard the prosecutor's discussion of the law to the extent it conflicted with the instructions provided by the Court, and we presume that the jury followed this instruction. See

---

[4] Murray initially brought an independent challenge to this aspect of the prosecutor's closing argument, but the District Court held that the Superior Court acted reasonably in rejecting this challenge, and it did not grant a certificate of appealability on this issue. App. 3, 799-801, 828-30.

14

Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000); Francis, 471 U.S. at 324 n.9, 105 S.Ct. at 1976 n.9.


IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order docketed April 30, 2013, denying Murray's habeas corpus petition.