Filed 6/22/15  P. v. Mejia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MATTHEW JAMES MEJIA,<br><br>    Defendant and Appellant. | G049509<br><br>(Super. Ct. No. 12ZF0158)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Matthew James Mejia and six others were jointly indicted for conspiracy to commit murder and participation in a criminal street gang. The indictment alleged all seven individuals committed the conspiracy for the benefit of, at the direction of, or in association with a criminal street gang. Defendant and three of the other indictees were jointly tried. The jury returned guilty verdicts on both counts, plus a true finding on the gang enhancement against each of them. The superior court sentenced defendant to 25 years to life in state prison for conspiracy. It also imposed two years for gang participation, but stayed the term. (Pen. Code, § 654.)

On appeal, defendant challenges his conspiracy conviction, arguing the only evidence supporting the charge was the uncorroborated testimony of an accomplice. He also contends the evidence fails to support the jury's true finding on the gang enhancement. In addition, defendant claims the trial court committed instructional error by (1) giving a legally incorrect version of CALCRIM No. 418 on the use of coconspirators' statements, (2) failing to clarify the phrase "in association with a[] criminal street gang" in CALCRIM No. 1401, and (3) giving CALCRIM No. 372 on consciousness of guilt from flight after commission of a crime. Finding no prejudicial error, we affirm the judgment.

FACTS

Due to a spate of recent shootings in a neighborhood claimed by a criminal street gang named West Myrtle, a group of gang unit police officers participated in a late night surveillance of the area. During the surveillance, the officers saw a vehicle occupied by several persons drive slowly through the neighborhood three separate times.

On its first pass, the vehicle stopped at one point. Three persons got out of it and walked along the street, "looking around" and "into the courtyards" of the adjacent

2

apartment buildings. As they did so, the vehicle moved forward paralleling their movement. After about a minute, the three individuals reentered the vehicle, which continued its slow drive along the street before turning at an intersection. The vehicle entered and slowly drove through the alley behind the apartment buildings, momentarily stopping at each courtyard.

The vehicle returned for a second pass, again proceeding slowly along the street. It stopped at a corner where three persons got out and crossed the street looking around. After a minute, they walked back and reentered the vehicle. The vehicle drove off, but returned a few seconds later and made a third slow pass along the street before driving through the alley again.

An officer in a marked patrol car stopped the vehicle as it began to leave the area. When it came to a stop, one occupant jumped out and tried to flee. Before his apprehension, he threw a loaded revolver onto to the roof of a restaurant, which the police later retrieved. The vehicle's six other male occupants, including defendant and Eric Beltran, were also arrested.

A few days later, the police questioned Beltran. He ultimately acknowledged that all but one person in the vehicle belonged to or associated with a street gang named Los Compadres. Beltran said that initially the group had planned to attend a party. They stopped at a home in an area claimed by Los Compadres to obtain a "toy," i.e., a gun, in case "something went wrong." Defendant was the one who left the vehicle and returned with the weapon. Someone in the vehicle then said, "let's go smoke a dude" or "get a turtle," which meant kill a member of the West Myrtle gang. After one of the passes along West Myrtle, a member of the group who had gotten out of the vehicle returned and said, "no one's there."

At trial, Beltran testified under an agreement with the prosecution that would allow him to be released from custody if he told the truth. However, his trial

testimony diverged significantly from what he told the police during the interrogation. Initially, Beltran acknowledged Los Compadres was a gang, but denied being a member of it, claiming only to be a "friend" of some of its members. He denied hearing anyone, including the persons on trial, state they belonged to Los Compadres. According to Beltran, on the way to a party the group decided to get something to eat. They circled Myrtle Street looking for a restaurant before being stopped by the police. He acknowledged knowing the area was claimed by West Myrtle, but denied knowing of the presence of a gun. Beltran claimed he "felt a lot of pressure" when questioned by the police after his arrest and told the officers what he thought they wanted to hear.

Beltran then admitted some of his prior testimony was untruthful. He acknowledged being affiliated with Los Compadres and that the persons on trial, including defendant, were also affiliated with the gang. He acknowledged West Myrtle was a rival gang and the group's act of driving into an area claimed by West Myrtle could result in "[a]n assault" or something "worse." But he continued to deny knowing there was a gun in the car or that the group intended to find and kill a West Myrtle gang member. Beltran said he lied to the officers during the interrogation when they asked him about having a gun in the car or that the group's intent was to "smoke a turtle." He claimed the purpose for driving along Myrtle Street was to "[h]ave a little excitement."

The prosecution presented evidence Los Compadres was a "turf-oriented" criminal street gang and that the vehicle's occupants, including defendant, belonged to the gang. One of Los Compadres' rivals was West Myrtle, another "turf-oriented" gang. Entering a neighborhood claimed by a rival gang is a means of showing disrespect. Killing a member of a rival gang can generate respect for a gang member and his gang, plus increase his gang status. Given a hypothetical based on the facts of this case, an expert on street gangs opined the conduct benefitted the participants' gang and also promoted, furthered, or assisted felonious conduct on the gang's behalf.

4

DISCUSSION

1. *Sufficiency of the Evidence*

    *1.1  Introduction*

Defendant challenges the sufficiency of the evidence supporting both his conspiracy conviction and the true finding on the gang enhancement.

The standard of review for these claims is well settled.  "[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt," presuming "in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  The same standard applies in reviewing an enhancement finding.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

    *1.2  Accomplice Testimony*

Penal Code section 1111 declares "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence *as shall tend to connect the defendant* with the commission of the offense."  (Italics added.)  The trial court instructed the jury that Beltran was an accomplice to the charged crimes and, to support a conviction, his statement and testimony required corroboration.  Defendant attacks his conviction for conspiracy to commit murder, arguing "the only evidence to establish any type of conspiracy" was "Beltran's testimony" and "there was insufficient evidence to corroborate" him.

5

This argument misconstrues the law applicable to accomplice testimony. Case law has made clear "the corroboration required by [this statute] does not include the corpus delicti and is confined to the matter of connection of the individual defendant with the crime." (*People v. Buono* (1961) 191 Cal.App.2d 203, 215-216.) Thus, contrary to defendant's argument, Beltran's pretrial statements about the group's acquisition of a gun, one participant's comment about "get[ting] a turtle," and his admissions during the interrogation and at trial that the group intentionally drove through a neighborhood claimed by a rival street gang was "sufficient to establish the fact of conspiracy." (*Id.* at p. 216.)

Further, the prosecution's other evidence linked defendant to the conspiracy. It supported a finding he and the other persons indicted belonged to a criminal street gang named Los Compadres. The officers conducting the late night surveillance testified a vehicle, later found to be occupied by defendant and the other indictees, made several slow drives through a neighborhood claimed by West Myrtle, a Los Compadres rival. On two occasions some of the occupants got out and walked along the street acting as if they were looking for someone. The vehicle twice drove through an alley stopping to look into the courtyards of apartment buildings where West Myrtle gang members were known to congregate. Later, when the police stopped the vehicle they discovered one of the occupants had a loaded firearm. Thus, unlike the facts in *People v. Falconer* (1988) 201 Cal.App.3d 1540, a case on which defendant relies, the evidence here did more than "merely connect a defendant with the . . . other persons participating in the crime." (*Id.* at p. 1543.) We conclude his attack on the sufficiency of the evidence supporting his conspiracy conviction lacks merit.

### 1.3  The Gang Enhancement

Penal Code section 186.22, subdivision (b)(1) enhances the punishment for

6

a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." There are two elements the prosecution must establish to support a true finding on this enhancement: "[T]he underlying crime was 'committed for the benefit of, at the direction of, or in association with any criminal street gang' (the gang-related prong), [and] 'with the specific intent to promote, further, or assist in any criminal conduct by gang members' (the specific intent prong)." (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.) Defendant contends the evidence fails to support either element. We disagree.

On the first element, defendant argues "beyond the fact of gang members in a rival gang's territory, there was little evidence other than the speculative opinion of the gang expert from which the jury could reasonably infer that the alleged conspiracy was gang related." This claim ignores much of the evidence presented at trial. All of the vehicle's occupants belonged to Los Compadres. They were armed and drove along a street in a neighborhood claimed by rival West Myrtle for the express purpose of "get[ting] a turtle," i.e., killing a member of the latter gang. Thus, the record reflects more than just a mere presence in a rival gang's claimed neighborhood.

In *People v. Albillar, supra,* 51 Cal.4th 47, the Supreme Court held the evidence supported a finding the defendants' sexual assaults were gang-related, finding the gang "expert['s] testimony adequately described the relationship between the gang and the current crimes." (*Id.* at p. 61.) The same is true here. The gang expert explained the importance of respect in the gang subculture and how gang members entering a neighborhood claimed by rival gang armed with a loaded gun for the express purpose of killing one of its members was a means of both showing disrespect to a rival gang and "gain[ing] status within the gang." *Albillar* held "Expert opinion that particular criminal conduct benefited a gang . . . can be sufficient to raise the inference that the conduct was

"committed for the benefit of . . . a[] criminal street gang." (*Id.* at p. 63.) Here, the gang expert testified that "going in large numbers into a rival's territory to commit a crime" was a "classic" means of benefiting the perpetrators' gang. Thus, the evidence supported the enhancement's first element.

On the second element defendant argues "there is no evidence in the record to suggest that [he] had the specific intent to promote or further the criminal activities of Los Compadres by engaging in a drive by shooting on the night in question." Contrary to his reasoning, what is required to support a true finding is that he had "the specific intent to promote, further, or assist criminal conduct by *gang members*." (*People v. Albillar, supra,* 51 Cal.4th at p. 67.) Further, "'[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense'" and while "'[e]vidence of a defendant's state of mind is almost inevitably circumstantial, . . . circumstantial evidence is as sufficient as direct evidence to support'" the finding. (*People v. Rios, supra,* 222 Cal.App.4th at pp. 567-568.) The evidence reflects everyone in the vehicle that evening belonged to the Los Compadres gang. Defendant's act of obtaining a loaded weapon and the group's entry into a rival gang's claimed territory intending to seek out and kill a rival gang member supported a finding he acted with the specific intent required to support a true finding on the enhancement.

## 2. Instructional Error

### 2.1 CALCRIM No. 418

Beltran's statements to the police during his interrogation were admitted as prior inconsistent statements. (Evid. Code, §§ 770 & 1235.) The court also admitted the statements Beltran attributed to the vehicle's other occupants under the coconspirator exception to the hearsay rule. (Evid. Code, § 1223.) The latter statute authorizes the admission of hearsay statements by coconspirators "if, at the threshold, the offering party

8

presents 'independent evidence to establish prima facie the existence of . . . [a] conspiracy[,]'" and also substantiates "three preliminary facts . . .: '(1) that the declarant was participating in a conspiracy at the time of the declaration; (2) that the declaration was in furtherance of the objective of that conspiracy; and (3) that at the time of the declaration the party against whom the evidence is offered was participating or would later participate in the conspiracy.'" (*People v. Hardy* (1992) 2 Cal.4th 86, 139.)

However, when explaining to the jury what must be demonstrated to support consideration of the statements Beltran attributed to the defendants, the court stated as follows: "In deciding whether the People have proved that the defendant committed any of the crimes or enhancement charged, you may not consider *any statement made out of court by Eric Beltran*, unless the People have proved by a preponderance of the evidence that, 1, some evidence other than the statement itself establishes that a conspiracy to commit a crime existed when the statement was made; 2, the defendants were members of and participating in the conspiracy when the statement was made; 3, either David Martinez, Isaias Arroyo, Johnny Olmedo, Victor Reyes, Raul Cervantes[,] Jr.[,] or Matthew Mejia made the statement in order to further the goal of the conspiracy; and 4, the statement was made before or during the time that the defendants were participating in the conspiracy." (Italics added.)

Defendant complains this instruction was erroneous. He argues that because the italicized phrase referred "to Beltran's out-of-court statements, rather than those of the defendants . . . the instruction . . . failed to ensure that the jury properly applied the rules for co[]conspirator statements to the statements truly at issue in this case." The Attorney General agrees with defendant's criticism and thus concedes the instruction as given was incorrect.

The question then is whether this error prejudiced defendant. He claims it did, arguing "[s]ince the initial reference in the instruction was to Beltran's out-of-court

statements, . . . there is a strong likelihood that the jurors did not view CALCRIM No. 418 as being applicable to the most critical statements admitted in this case." The Attorney General disagrees, claiming the error benefitted defendant "because instead of making the conspiracy findings as to just those statements Beltran attributed to his codefendants, the jury made the findings as to all the statements made by Beltran." Thus, "the error did not contribute to the verdict."

Generally, errors in instructing the jury are reviewed under the state law standard of "whether it is reasonably probable that a result more favorable to [the] defendant[] would have been reached had the jury been correctly instructed . . . ." (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 39.) In *People v. Prieto* (2003) 30 Cal.4th 226, 251 and *People v. Sully* (1991) 53 Cal.3d 1195, 1231-1232, the Supreme Court applied this standard where the trial court admitted the statements of coconspirators, but failed to give the standard instruction on the requirements of Evidence Code section 1223.

Defendant claims this error violated his federal constitutional right to due process. The United States Supreme Court has explained that "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation. [Citation.] Rather, the defendant must show both that the instruction was ambiguous and that there was '"a reasonable likelihood"' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. . . . Because it is not enough that there is some 'slight *possibility*' that the jury misapplied the instruction, [citation], the pertinent question 'is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."'" (*Waddington v. Sarausad* (2008) 555 U.S. 179, 190-191 [129 S.Ct. 823, 172 L.Ed.2d 532]; *People v. Williams* (2013) 56 Cal.4th 630, 688 ["'[I]n reviewing an ambiguous

10

instruction . . . we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution'"]; *People v. Jones* (2012) 54 Cal.4th 1, 54 [to violate due process instructional error must "'infect[] the entire trial'"].)

We find no prejudicial error regardless of which standard of review is applied. First, the statement about "get[ting]" or "smok[ing] a turtle," was likely admissible for the nonhearsay purpose of establishing an operative fact; the agreement to kill a rival gang member. (*People v. Smith* (2009) 179 Cal.App.4th 986, 1003 [""""If a fact in controversy is whether certain words were spoken or written and not whether the words were true, evidence that these words were spoken or written is admissible as nonhearsay evidence""""]; *People v. Curtis* (1951) 106 Cal.App.2d 321, 326 ["An act, declaration, or omission of an alleged conspirator which forms a part of the transaction which is in dispute—the agreement coupled with an overt act—is not hearsay and is admissible in evidence"].) The statement constituted the agreement to kill a West Myrtle gang member that was immediately followed by the group driving to the neighborhood claimed by West Myrtle and searching for rival gang members.

Second, defendant fails to make a showing there is a reasonable likelihood the jury employed the erroneously worded instruction in a manner that reduced the prosecution's burden of proving him guilty of conspiracy to commit murder. The manner in which the vehicle drove through the neighborhood and the conduct of those occupants who briefly disembarked from it searching for someone or something suggests defendant and the vehicle's other occupants had come to the area for a prearranged purpose. This inference, when coupled with evidence the vehicle's occupants possessed a loaded weapon, all of them belonged to a criminal street gang, and were in a neighborhood claimed by a rival gang convincingly supports a finding they intended to shoot and kill a rival gang member.

11

Defendant claims the instruction prejudiced him because "it is likely that the jurors interpreted the instruction as applying only to Beltran's out-of-court statements, not those of others that he reported to law enforcement. As a result, the statements made by the other occupants [in] the vehicle were never properly subjected to the standards required for consideration of statements by co[]conspirators." But as the Attorney General notes, Beltran was the source for *all* of the statements admitted at trial and, since "the other codefendants' statements were a subset of Beltran's general discussion with the police, the jury necessarily applied the conspiracy finding to those statements as well." Thus, the erroneous version of CALCRIM No. 418 likely benefitted defendant. We conclude this error did not prejudice him.

### 2.2 CALCRIM No. 1401

The court instructed the jury on the criminal street gang enhancement by giving CALCRIM No. 1401. Defendant contends the trial court erred in failing to sua sponte clarify the phrase "'in association with a criminal street gang.'" He asserts it "is a legal term with a specific definition that needed to be provided to the jury." This argument lacks merit.

The general rule is that "[w]hen a word or phrase "'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request."'" (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) Thus, the duty to provide clarification arises only where "[a] word or phrase . . . ha[s] a technical, legal meaning" that "differs from the meaning that might be ascribed to the same terms in common parlance." (*Id.* at pp. 574-575.)

Cases have construed the phrase "in association with a criminal street gang" as it is commonly understood; a defendant committing a felony with one or more

12

other gang members suffices to support a true finding on the enhancement. (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 661, fn. 7 ["that the defendant had a fellow gang member in the stolen vehicle with him would support a finding that he acted in association with the gang"]; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 [enhancement supported where the "[d]efendant, who admitted membership in King Kobras, committed the crimes with Garcia, another admitted member"]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [crime committed with two other gang members; "the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"].)

Defendant argues *People v. Albillar, supra,* 51 Cal.4th 47 supports his contention. Not so. There the jury returned a true finding on the gang enhancement against three gang members who happened to be related to each other and lived in the same home. The majority opinion held the evidence supported the finding. Defendant refers to a statement in the opinion declaring, "The record supported a finding that defendants relied on their common gang membership and the apparatus of the gang in committing the sex offenses" to support his argument. (*Id.* at p. 60.) But nothing in the opinion suggests the court intended this statement to create a technical meaning for the phrase "in association with a criminal street gang." Defendant's reliance on comments in the concurring and dissenting opinion which disagreed with the majority's decision (*id.* at p. 73 (conc. & dis. opn. of Werdegar, J.)), is also unpersuasive. We conclude the trial court was not required to clarify the meaning of the phrase "in association with a criminal street gang" in this case.

### 2.3  CALCRIM No. 372

The court gave CALCRIM No. 372 on consciousness of guilt from flight. It stated: "If the defendant fled or tried to flee immediately after the crime was

committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."  Defendant argues this instruction violated his constitutional rights because its use of the phrase "'aware of his guilt'" "permitted the jury to infer one fact, guilt, from another fact, i.e., flight from the scene of the crime," an inference he contends "lack[s] a rational basis."

This argument has been repeatedly rejected.  In *People v. Mendoza* (2000) 24 Cal.4th 130, the Supreme Court held "'the suggested conclusion is . . . one that reason and common sense justify in light of the proven facts before the jury,'" and "permits a jury to infer, if it so chooses, that the flight of a defendant immediately after the commission of a crime indicates a consciousness of guilt."  (*Id.* at p. 180; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1244 ["As there is a rational basis for inferring that if a person flees immediately after a crime to avoid detection, he may do so because he believes himself to be guilty, . . . defendant's due process claim is without merit"].)

Defendant argues the holdings in *Mendoza* and *Pensinger* are inapplicable here because they reviewed CALJIC No. 2.52, which does not use the phrase "aware of his guilt."  But *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154 rejected this distinction and held this phrase does not render CALCRIM No. 372 constitutionally infirm.  "Since the dictionary defines 'consciousness' as '[s]pecial awareness or sensitivity:  class consciousness; race consciousness' [citation], ipso facto the special awareness that *Mendoza* allows a jury to infer from a flight instruction is 'guilt consciousness' (in the syntax of the dictionary) or 'consciousness of guilt' (in the syntax of the California Supreme Court).  [Citations.]  As the inference in *Mendoza* passes constitutional muster, so does the inference here."  (*Id.* at p. 1159.)  We agree with this reasoning and thus conclude the trial court did not err in giving CALCRIM No. 372.

14

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.