FILED
United States Court of Appeals
Tenth Circuit

**July 23, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLOS GOMEZ,

     Petitioner - Appellant,

v.

RANDY LIND, Warden of the Colorado
Territorial Correctional Facility;
CYNTHIA COFFMAN, Attorney General
of the State of Colorado,

     Respondents - Appellees.

No. 17-1427
(D.C. No. 1:15-CV-02582-PAB)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Carlos Gomez, a Colorado state prisoner proceeding pro se, seeks a certificate of

appealability (COA) to appeal the denial of his habeas application. We deny his

application and dismiss this matter.

**I. BACKGROUND**

A jury convicted Gomez of first-degree murder, and he was sentenced to life in

prison without parole. His conviction was affirmed on direct appeal to the Colorado

Court of Appeals (CCA). Gomez then filed a motion for post-conviction relief in the trial

---

     * This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court, which was denied. The CCA affirmed the denial of his motion for post-conviction relief.

The relevant facts are set forth in the CCA's opinion in the direct appeal. The victim was inside a bar when he observed Gomez, by video camera, peering into or attempting to break into a car in the parking lot. The victim and several other patrons went outside to confront Gomez, who sprayed them with pepper spray and ran away. Several men, including the victim, gave chase, during which Gomez fired a handgun in the general direction of his pursuers. The victim, who eventually caught up with Gomez, was fatally shot during the ensuing struggle. Gomez's "theory of defense was that the victim's death was a non-criminal accident, which had occurred while he was defending himself from the victim and the other pursuers. [He] testified that he did not shoot the victim; rather, the shooting occurred during the struggle for the gun." R., Vol. 1 at 292.

On direct appeal, Gomez raised several errors, including: (1) the lack of evidence to support the jury instructions on provocation and initial aggressor; (2) insufficient evidence to support the conviction; and (3) prosecutorial misconduct. The CCA considered the merits of these claims and denied them.

In his motion for post-conviction relief, Gomez raised several new arguments, including numerous instances of ineffective assistance of counsel and constitutional error concerning the jury instruction on intoxication. The trial court denied the motion, and the CCA affirmed.

Gomez then filed his habeas application under 28 U.S.C. § 2554 in the United States District Court of Colorado, in which he asserted three claims, each with several

2

subparts. The court denied the claims and also denied Gomez's request for a certificate of appealability (COA). He now seeks a COA to appeal the denial of his habeas application.[1]

## II. STANDARD OF REVIEW

Gomez must obtain a COA before he can appeal the district court's denial of his § 2254 application. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a state prisoner appealing denial of a § 2254 application to obtain a COA). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make that showing, a petitioner must demonstrate that reasonable jurists could debate "whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

When a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). *See also Davis v. McCollum*, 798 F.3d 1317, 1319 (10th Cir. 2015). Factual findings of the state court are presumed correct unless the applicant rebuts

---

[1] The operative pleading was Gomez's amended application. As an initial matter, the district court dismissed several claims, which Gomez does not challenge. In its final order, the court denied the remaining claims on the merits. Gomez now seeks a COA on some, but not all the claims that were denied by the court.

that presumption by "clear and convincing evidence." § 2254(e)(1). *See also Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011).

"For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our independent judgment and review the federal district court's conclusions of law de novo. . . . The district court's factual determinations are reviewed for clear error." *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) (internal quotation marks omitted). *See also Gipson v. Jordan*, 376 F.3d 1193, 1996 (10th Cir. 2004) ("[I]f the state court did not decide a claim on the merits, and the claim is not otherwise procedurally barred, we address the issue de novo and the § 2254(d)(1) deference requirement does not apply."). However, "state-court findings of fact *that bear upon the claim* are entitled to a presumption of correctness rebuttable only by clear and convincing evidence." *Littlejohn*, 704 F.3d at 825 (internal quotation marks omitted). *See also Gipson v. Jordan*, 376 F.3d 1193, 1996 (10th Cir. 2004) ("[I]f the state court did not decide a claim on the merits, and the claim is not otherwise procedurally barred, we address the issue de novo and the § 2254(d)(1) deference requirement does not apply.").

### III.  ANALYSIS

**A.  Self-Defense Related Jury Instructions**

Although Gomez's theory of defense was accidental shooting, he nonetheless convinced the trial court to give an instruction on self-defense. The court then granted the prosecution's request to further instruct the jury that Gomez could not use self-defense to justify the shooting if he was the initial aggressor or provoked the victim into attacking him. *See* Colo. Rev. Stat. § 18-1-704(3)(a), (b).

4

On direct appeal, Gomez argued that the trial court should not have given the provocation and initial-aggressor instructions, because no evidence supported them. The CCA agreed that the instructions should not have been given, but concluded that any error was harmless because Gomez was not even entitled to a self-defense instruction. In particular, the CCA relied on Gomez's testimony that "'I never did intentionally shoot the gun during the tug of war and I never did have my finger on the trigger.'" R., Vol. 1 at 296.

The CCA held that under Colorado law, Gomez's testimony was a "judicial admission[] which wholly contradict[s] the tendered theory of defense instruction," *id*. at 295, and therefore he was not entitled to a self-defense instruction. *See People v. York*, 897 P.2d 848, 850 (Colo. App. 1994) (defendant not entitled to jury instruction embodying his theory of the case when he testifies under oath to facts that contradict that theory); *People v. Garcia*, 826 P.2d 1259, 1263 (Colo. 1992) (same).

On habeas review, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As such, "[c]laims of erroneous jury instructions can justify setting aside a state conviction on habeas review only if the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or [they are] otherwise constitutionally objectionable as, for example, by transgressing the constitutionally

5

rooted presumption of innocence." *Dockins v. Hines*, 374 F.3d 935, 938-39 (10th Cir. 2004) (internal quotation marks omitted).

The district court recognized that due process requires the prosecution to prove every element of a charged offense beyond a reasonable doubt, however, that same due process guarantee does not apply to affirmative defenses. *Gilmore v. Taylor*, 508 U.S. 333, 341 (1993). As such, "[t]he most that can be said of the instructions given at [Gomez's] trial is that they created a risk that the jury would [improperly consider] . . . an affirmative defense . . . with respect to which . . . [a] due process guarantee does not apply." *Id*. at 343.

Gomez makes one additional argument. He contends that the district court erred because the CCA's decision regarding his due process claim was based on an unreasonable determination of the facts—that he made a judicial admission that contradicted a theory of self-defense. *See* § 2254(d)(2). According to Gomez, he testified that "he did not pull the trigger during th[e] physical altercation." Aplt. Combined Opening Br. at 5. But this misstates his testimony; instead, Gomez testified "'I never did intentionally shoot the gun during the tug of war and I never did have my finger on the trigger.'" R., Vol. 1 at 296. This is different than having a finger on the trigger, ready to shoot. Therefore, Gomez has no colorable argument that the CCA's decision was based on an unreasonable determination of the facts.

Reasonable jurists could not debate whether Gomez's due process claims should have been resolved differently.

6

**B. Ineffective Assistance of Counsel**

A criminal defendant has a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Claims of ineffective assistance are mixed questions of law and fact. *Id*. at 698. To establish such a claim, a defendant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To overcome the strong presumption that counsel's performance was reasonable, the defendant must show that the alleged error was not sound strategy under the circumstances. *Id*. And under the prejudice prong, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Federal habeas courts owe deference to state-court decisions under § 2254(d)(1), and where the state court has ruled on the merits of an ineffective-assistance claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. (brackets and internal quotation marks omitted).

7

In any event, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." *Id.* (alteration and internal quotation marks omitted).

### 1. Failure to Present Mental-Health Defense

Gomez argued that his trial counsel was ineffective by failing to properly investigate and present a mental-health defense—that his low IQ and other neurological problems prevented him from forming the intent required for first-degree murder. According to Gomez, if counsel had presented this defense, there was a reasonable probability that the jury would have reached a different conclusion.

The CCA addressed this issue in Gomez's appeal from the trial court's denial of his motion for post-conviction relief. It explained that because "his attorney retained a psychologist and obtained her report . . . [t]he issue is . . . not the adequacy of the defense investigation, but whether the strategic decision not to call the expert [psychologist] constituted ineffective assistance of counsel." R., Vol. 1 at 176 (ellipses and internal quotation marks omitted). In this regard, the CCA found that Gomez's "trial counsel made a strategic decision to pursue the defense that the shooting was accidental, not defenses based on mental slowness or insanity," *id.* at 178, and concluded that Gomez failed to overcome *Strickland*'s presumption that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," 466 U.S. at 690.

The district court found the CCA's decision on this claim was neither contrary to nor an unreasonable application of *Strickland*. Nor was it based on an unreasonable

8

determination of the facts in light of the evidence presented in the state-court proceeding. It therefore denied a COA on this claim. Reasonable jurists could not debate whether this claim should have been resolved differently.

### 2. *Failure to Present Evidence of Intoxication*

Next, Gomez argues that trial counsel performed ineffectively by failing to present expert testimony that Gomez's intoxication rendered him incapable of forming the necessary intent for first-degree murder. The CCA addressed this issue in Gomez's appeal from the trial court's denial of post-conviction relief, and found no constitutional error. First, it noted that "[t]rial counsel did establish for the jury that Gomez was intoxicated, both through the introduction of medical records showing his acute intoxication and through Gomez's testimony." R., Vol. 1, at 180 (brackets and internal quotation marks omitted). Second, "[t]he failure to bolster . . . uncontroverted evidence with an expert is not constitutionally deficient. Nor is it necessarily prejudicial, since the jury is free to reject the testimony of an expert." *Id.* (internal quotation marks omitted). Last, the CCA concluded that trial counsel's strategic choice not to pursue an intoxication defense was not ineffective assistance of counsel under *Strickland*.

The district court held that the CCA's resolution of the claim was not contrary to *Strickland*. "The [CCA] again determined that trial counsel made an informed decision to pursue a particular trial strategy and, in any event, evidence of [Gomez's] intoxication was presented to the jury through his own testimony and by admission of medical records." R., Vol. 2 at 44. Reasonable jurists could not debate whether this claim should have been resolved differently.

9

### 3. *Failure to Object to Improper Argument*

On direct appeal, Gomez alleged that multiple instances of prosecutorial misconduct during closing argument denied him a fair trial. The CCA disagreed. In his motion for post-conviction relief, he raised the same argument again, but failed to identify any specific instance of improper argument. The trial court nonetheless addressed the instances of alleged improper argument that Gomez had raised on direct appeal, and determined that the failure to object did not prejudice the defense of the case. On appeal from the denial of post-conviction relief, the CCA declined to consider the argument because Gomez had not identified any specific instance of improper argument in his motion in the trial court. *See Hooker v. People*, 477 P.2d 376, 377 (Colo. 1970) ("A motion for review in the trial court as contemplated by the provisions of Crim. P. 35(b), is insufficient and may be summarily denied where, as here, it does not specify the facts which constitute the basis for the unconstitutional charge.").

The district court acknowledged that it is possible to obtain habeas relief on a claim that counsel failed to object to prosecutorial misconduct. It found, however, that Gomez had failed to "identify any particular instance of allegedly improper argument by the prosecution," and therefore, could not "meet his burden of showing that the [CCA's] conclusions with regard to the prosecutorial misconduct claim were somehow contrary to or an unreasonable application of a clearly established rule of federal law." R., Vol. 2 at 47.

In this court, Gomez again fails to identify any particular instance of prosecutorial misconduct or develop any legal argument on the issue. We will not consider the issue

10

because "[w]e generally avoid entertaining arguments for reversing a district court's judgment that [are] not adequately developed by a petitioner in his opening brief." *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (internal quotation marks omitted). *See also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately presented[] in an appellant's opening brief.").

### 4. *Failure to Call Rebuttal Witnesses*

According to Gomez, trial counsel was also ineffective by failing to present testimony from Gretchen Horst and Karlin Ray. He says Horst would have testified that he was threatened by the bar patrons, and Ray would have testified that Gomez fired several warning shots into the air. He argues that this would have bolstered his own testimony and credibility. On appeal from the denial of post-conviction relief, the CCA concluded that the proposed testimony "would have been cumulative to other evidence admitted at trial and would have addressed uncontested issues in the trial." R., Vol. 1 at 183. Further, the CCA concluded that Ray's testimony would have contradicted Gomez's testimony that he fired shots into the ground. And "[t]o the extent Gomez contends that their testimony supported a self-defense theory," *id.*, the CCA concluded that trial counsel's strategic choice to pursue an accidental-shooting defense was not unreasonable. The district court found no unreasonable application of *Strickland*.

"Generally, counsel's failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented at trial is not deemed constitutionally deficient." *Snow v. Sirmons*, 474 F.3d 693, 729 (10th Cir. 2007).

11

Moreover, we have explained that counsel's strategic choice to pursue an accidental-shooting defense instead of self defense was a reasonable trial strategy and therefore not ineffective assistance under *Strickland*. Reasonable jurists could not debate whether this claim should have been resolved differently.

### 5. *Jury Instruction on Intoxication*

The issue underlying this ineffective-assistance claim is Gomez's argument that the intoxication instruction violated his constitutional rights because it failed to explain that intoxication can negate the culpable mental state required for first-degree murder. According to Gomez, trial counsel was ineffective when he failed to object to the inadequate and misleading instruction, and appellate counsel was ineffective when he failed to raise the issue on direct appeal. Gomez raised the issue in his motion for post-conviction relief, but the trial court declined to address it because he had not raised it on direct appeal. *See* Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought. . . ."). Like the trial court, the CCA declined to address the merits and affirmed the summary denial of the claim.

Although the district court agreed that the claim was procedurally defaulted, the court decided to review the claim on the merits anyway, because Gomez raised it as an ineffective-assistance claim. The court considered the claim de novo and determined that Gomez was not entitled to habeas relief. We exercise our independent judgment and review the court's conclusions of law de novo and its factual determinations for clear error. *Littlejohn*, 704 F.3d at 825.

Generally, intoxication is not a defense to a crime under Colorado law.

Nonetheless, "evidence of intoxication of the defendant may be offered by the defendant

when it is relevant to negative the existence of a specific intent if such intent is an

element of the crime charged." Colo. Rev. Stat. § 18-1-804(1). In *People v. Miller*,

113 P.3d 743, 751 (Colo. 2005), the court held that "when a voluntary intoxication

instruction is warranted, the trial court should affirmatively instruct the jury that 'after

deliberation' is part of the culpable mental state required by first-degree murder and may

be negated by evidence of voluntary intoxication."

The intoxication instruction in Gomez's case stated as follows:

> You have heard evidence of defendant's use of alchohol [sic]. You should consider this evidence in determining whether the prosecution has proven beyond a reasonable doubt that defendant had the required culpable mental state of Murder in the First Degree. With regard to Murder in the First Degree, unless the prosecution has proven beyond a reasonable doubt, taking into consideration any evidence of intoxication, that Defendant had the required culpable mental state for the offense, Murder in the First Degree, you must find him not guilty of the offense.

> Use of alcohol is not applicable to negate the culpable mental states of Murder in the Second Degree, Murder in the Second Degree with provocation, Reckless Manslaughter and Criminally Negligent Homicide.

R., Vol. 2 at 51.

Further, the elements instruction told the jury that the mental state required for

first-degree murder was "after deliberation and with intent." *Id*. at 52 (internal quotation

marks omitted). And yet another instruction defined "with intent" and "after

deliberation" as follows:

> A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial whether or not the result actually occurred.

13

> "After deliberation" is part of the specific intent of Murder in [t]he First Degree (after deliberation). After deliberation means not only intentionally, but, also, that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.

*Id.*

The prosecution conceded that the intoxication instruction itself did not specifically state that intoxication may "negate" the requisite mental state for first-degree murder, and therefore was arguably ambiguous. However, it maintained there was no constitutional error.

To demonstrate a constitutional error from a jury instruction in a state criminal trial, "the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotation marks omitted). In making this determination, the jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191 (internal quotation marks omitted). The relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted).

The district court noted that "although [the intoxication instruction] did not state expressly that voluntary intoxication would negate the mens rea required for first degree murder, it brought to the jury's attention that one reason [Gomez] might lack the requisite

14

intent is that he was intoxicated."  R., Vol. 2 at 54 (internal quotation marks and emphasis omitted).  More to the point, the court found that "[t]he [intoxication] instruction did not alter the elements of the offense, nor did it shift the burden of proof onto [Gomez]," because the instruction advised the jury that it must find Gomez not guilty "unless **the prosecution has proven beyond a reasonable doubt**, taking into consideration any evidence of intoxication, that [he] had the required culpable mental state for the offense." *Id*.  "Considering the instructions and record as a whole, [Gomez] does not show there was a reasonable likelihood that the jury applied [the intoxication instruction] in a way that relieved the prosecution of its burden of proving every element of the crime beyond a reasonable doubt," *id*., and thus Gomez is not entitled to federal habeas corpus relief.  We have reviewed the claim de novo, and agree that Gomez failed to establish that the instruction violated his constitutional rights.

Under a de novo review standard, we also agree with the district court that Gomez is not entitled to federal habeas relief on his ineffective-assistance claim.  Even if Gomez could meet the first prong of *Strickland*, he still could not establish that counsel's deficient performance prejudiced his defense.  Despite the instruction's not specifically stating that intoxication may "negate" the requisite mental state for first-degree murder, nothing suggests that the jury applied the instruction in a way that relieved the prosecution of proving every element of first-degree murder, including the element of intent, beyond a reasonable doubt.

### 6. Failure to Obtain Gun Residue Testing

Gomez argues that trial counsel was ineffective for failing to consult with a gunshot-residue expert. Because Gomez did not raise this issue in the Colorado courts, the district court held it was anticipatorily defaulted. The district court rejected Gomez's contention that the default was excused due to the ineffectiveness of his post-conviction counsel, because his claim that his trial counsel was ineffective lacked merit.

The district court's order denying Gomez's § 2254 application described this claim in detail, including the contents of an expert report Gomez attached to his application for habeas relief. Essentially, what Gomez hoped to establish was that "analysis of the gunshot residue '*may* have shown that during the struggle between [Gomez] and the victim, the victim's finger could have been on the trigger instead of [Gomez's] or indeed there may have been an accidental discharge of the weapon.'" *Id.* at 64 (brackets omitted). The expert further reported that the analysis "'may be a tipping point in the case in laying a foundation for whether or not the gunshot was accidental or deliberate.'" *Id*. at 64-65. Importantly, however, the report blamed this uncertainty on the police—not trial counsel: "'[T]he Denver Police Department substituted [its] judgement [sic] to not perform the . . . test on . . . the victim and Mr. Gomez.'" *Id*. at 65 (brackets omitted). The court also noted that trial counsel challenged the absence of such testing during his cross-examination of one of the detectives, and argued that a more thorough or complete investigation could have better shown what actually occurred, possibly raising a reasonable doubt whether Gomez had intentionally shot the victim.

16

We agree with the district court that Gomez failed to show that trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Counsel addressed the absence of gunshot-residue testing in his cross-examination of the detective and in his closing argument. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). We see nothing suggesting that counsel's performance was wrong, let alone completely unreasonable.

Nor can Gomez establish prejudice. To establish prejudice, Gomez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. The jury had the benefit of counsel's cross-examination of the detective and the closing argument and still rejected Gomez's accidental-shooting defense. Moreover, given the uncertain and theoretical nature of what testing might have disclosed, we agree with the district court that Gomez has not shown a substantial likelihood that the outcome would had been different had trial counsel consulted with an expert. Gomez has failed to carry his burden under *Strickland*.

### 7. Cumulative Prejudice

In his motion for post-conviction relief, Gomez argued that the trial counsel's cumulative errors deprived him of the right to a fair trial. The CCA resolved the claim on the merits and denied it, "because Gomez has not shown that trial counsel committed any

17

errors." R., Vol. 1 at 184. The district court assumed that cumulative-error doctrine is clearly established federal law under § 2254(1)(d), and determined that Gomez was not entitled to habeas relief because it found no constitutional errors in the trial.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn*, 704 F.3d at 868 (internal quotation marks omitted). Reasonable jurists could not debate whether this claim should have been resolved differently.

## IV. CONCLUSION

Gomez has not shown that reasonable jurists could debate the correctness of the district court's denial of his § 2254 habeas application. Thus, we deny his request for a COA and dismiss this matter. We grant Gomez's motion to proceed in forma pauperis on appeal.

Entered for the Court

Gregory A. Phillips
Circuit Judge