*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
TANG, LAWRENCE, and STEPHENS,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Eduardo A. HERRERA**
Aviation Machinist's Mate Second Class (E-5), U.S. Navy
Appellant

**No. 201800062**

Decided: 17 April 2020[1]

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Stephen Reyes

Sentence adjudged 19 October 2017 by a general court-martial convened at Fleet Activities Yokosuka, Japan, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for 90 days, and a bad-conduct discharge.

For Appellant:
*Lieutenant Daniel E. Rosinski, JAGC, USN*

---

[1] Following release of our initial opinion on 5 September 2019, Appellant submitted a timely request for reconsideration. Granting reconsideration, we have withdrawn our initial opinion.

For Appellee:
*Lieutenant Clayton S. McCarl, JAGC, USN*
*Lieutenant Kimberly Rios, JAGC, USN*
*Major Clayton L. Wiggins, USMC*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

Judge LAWRENCE delivered the opinion of the Court, in which Senior Judge TANG and Judge STEPHENS joined.

———————————————

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

———————————————

LAWRENCE, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice [UCMJ].[2] The members acquitted Appellant of two other specifications under the sole charge alleging rape and sexual assault of the same victim.

Appellant raises three assignments of error [AOEs][3]: (1) the military judge plainly erred by improperly instructing the court-martial members; (2) the trial defense counsel [TDC] was ineffective for failing to object to this instruction; and (3) the evidence is factually insufficient. We find no prejudicial error and affirm.

## I. BACKGROUND

The victim, Hospitalman [HN] KT, and Appellant met and became platonic friends through playing on opposite teams in an on-base bowling league. Over time, Appellant and HN KT engaged in occasional conversations on social media platforms.

———————————

[2] 10 U.S.C. § 920 (2012).

[3] We have reordered the AOEs.

On 16 April 2016, Appellant drank alcoholic beverages as he played softball. He then continued to drink more alcohol that evening at the base enlisted club. At trial, Appellant testified that, due to his intoxication, he had no recollection of anything that happened from the time he was at the enlisted club until he awoke the next morning.

HN KT testified that she and Appellant exchanged social media messages while she was babysitting off the base that night. In their messages, they agreed that Appellant would come over to her barracks room upon her return and they would watch a movie together.

Shortly after midnight, HN KT sent a message to Appellant to let him know that she had returned to her barracks room. When Appellant arrived, he smelled of alcohol, slurred his speech, leaned against the door, and was unstable as he walked into the room. HN KT asked Appellant to pick out a movie for them to watch; then she went to use the bathroom that was in the middle of the suite of two adjoining barracks rooms. She returned to wash her hands at the sink in her room, at which time Appellant came up from behind HN KT and pinned her in by placing his hands on the sink to either side of her. Appellant started to kiss her neck and HN KT unsuccessfully tried to escape or push him away. Appellant grabbed HN KT and pushed her onto her bed. He then bit HN KT on the abdomen, then on the breasts, and later on her inner thighs and leg. Ultimately, HN KT was able to break away and flee to her bathroom where she waited behind a locked door until Appellant left her room. HN KT reported what happened over a month after the events in question. Additional facts necessary for resolution of the AOEs are included in the discussion below.

## II. DISCUSSION

### A. Instructional Error

We first address Appellant's contention that the military judge committed plain error by providing contradictory instructions concerning the bodily harm element of the offense.

#### 1. *The legal standard of review*

At trial, the TDC did not object to the instructions provided by the military judge. The TDC also explicitly responded, "No, your Honor," to the military judge when questioned whether he had objection to the instructions

or requested additional instructions.[4] This trial and request for reconsideration both pre-dated our superior court's opinion in *United States v. Davis* in which the TDC's affirmative response would constitute waiver and "leave[ ] no error for us to correct on appeal."[5] Nevertheless, having previously evaluated this case under plain error review, in our discretion, we elect not to apply waiver to this issue upon reconsideration.[6]

When there is no objection to panel instructions at trial, we review for plain error and grant relief only when "(1) there was error that was (2) clear or obvious, and that (3) materially prejudiced a substantial right of the accused."[7] If error was non-constitutional, affecting neither the presumption of innocence nor Appellant's ability to present a defense, we test whether any such error had a "substantial influence" on the findings.[8] Should we find the instructional error to be constitutional in nature, we can affirm only if such error is harmless beyond a reasonable doubt.[9] In the context of instructions, error is harmless beyond a reasonable doubt only if we find that "the error did not contribute" to the findings or the sentence.[10]

*2. Analysis*

Appellant was convicted of a specification alleging abusive sexual contact in that he "did . . . touch directly the breast and inner thigh of [HN KT] by causing bodily harm to [HN KT], to wit: biting her breast and legs, with an intent to gratify the sexual desire of [Appellant]."[11]

The military judge provided the following instruction relating to this specification:

> In Specification 3 of the Charge the accused is charged with
> the offense of abusive sexual contact in violation of Article 120

---

[4] Record at 717-18.

[5] 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

[6] *See United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016).

[7] *United States v. McDonald*, 78 M.J. 376, 378 (C.A.A.F. 2019).

[8] *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003).

[9] *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (citing *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)).

[10] *Id.* (quoting *Kreutzer*, 61 M.J. at 298).

[11] Charge Sheet.

of the UCMJ. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt that:

On or about 17 April 2016, at or near Naval Air Facility, Atsugi, Japan, the accused committed sexual contact upon [HN KT] by touching directly the breast and inner thigh of [HN KT], and

[Two,] [t]he accused did so by causing bodily harm to [HN KT] to wit: biting her breast and her legs;

Three, that the accused did so with the intent to gratify his sexual desire, and

Four, the accused did so without the consent of [HN KT].

Touching may be accomplished by any part of the body.

"Bodily harm" means any offensive touching of another, however slight, including any nonconsensual sexual act or non-consensual sexual contact.

The government has alleged the accused committed a sexual contact, to wit: touching directly the breast and inner thigh of [HN KT] and that the same physical acts also constitute bodily harm required for the charge of abusive sexual contact. Now under these circumstances, the government also has the burden to prove beyond a reasonable doubt that [HN KT] did not consent to the physical acts.[12]

Appellant argues that the instruction is "contradictory" and "effectively removed the requirement that the members find beyond a reasonable doubt that [Appellant] bit HN KT" which "allowed the members to convict [Appellant] for *any touching*" short of the biting the Government alleged.[13]

The military judge was required to instruct the members on "[a] description of the elements of each offense charged."[14] The elements of the offense, as defined by the President in the *Manual for Courts-Martial* [*MCM*], are: (1) that Appellant committed sexual contact; (2) that he did so by causing bodily harm; and (3) that he did so with the intent to gratify his sexual

---

[12] Record at 662-63; App. Ex. LXXXVIII.

[13] Appellant's Brief of 6 Aug 18 at 19 (emphasis in original).

[14] Rule for Courts-Martial 920(e)(1).

desires.[15] As tailored above, the military judge's instructions comport with the presidentially-defined elements of the offense. The military judge added a fourth element, which served to *increase* the Government's burden of proof, by instructing that the members had to find that Appellant committed the sexual act without HN KT's consent. This is a judicially created fourth element that the Military Judge's Benchbook recommends when "the same physical act is alleged as both the actus reus and the bodily harm for the charged sexual contact."[16]

In this case, the military judge noted, and the parties agreed, that the fourth element might apply because the actus reus of "touching directly the breast and inner thigh" was very similar to the alleged bodily harm of "biting her breast and her legs."[17] Thus, the military judge added the judicially created fourth element with the express assent of the TDC.[18]

Because the military judge added the fourth element, he noted in his instructions that "the same physical acts also constitute bodily harm required for the charge of abusive sexual contact."[19] Appellant has based this AOE on this portion of the last paragraph of the instruction taken in isolation. Rather than parsing just one portion, we must consider the instructions as a whole.[20]

In context, there is no reasonable reading of the instructions to suggest that the military judge impermissibly lessened the Government's burden. Following four explicitly defined elements of the offense, this language was clearly prefatory, noting that in these "circumstances, the government also has the burden to prove beyond a reasonable doubt that [HN KT] did not consent to the physical acts."[21] The military judge correctly instructed the members of the elements of abusive sexual contact that necessarily included *both* the direct touching of HN KT's breast and inner thigh *and* the bodily harm brought about *by biting* her breast and legs.

---

[15] *MCM* (2016 ed), Part IV, ¶ 45b(7).

[16] Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-16, note 3 (10 Sep 2014).

[17] Charge Sheet.

[18] *See* Record at 115, 616-19.

[19] *Id.* at 663.

[20] *United States v. Schap*, 49 M.J. 317, 322 (C.A.A.F. 1998).

[21] Record at 663.

Even if the challenged prefatory language created any ambiguity with the military judge's clear listing of the four elements of the offense, we do not find error. The members receive instructions following the presentation of evidence over the course of the trial. We too consider instructions "in the context of the instructions as a whole and the trial record."[22] Looking to the entire record, there was ample evidence that the Government and the Defense viewed the specification as alleging that Appellant bit HN KT on her breast and thigh. HN KT provided compelling testimony describing how Appellant repeatedly bit her, and the Government presented photographs that showed significant bruising. After testifying that Appellant first bit her abdomen, HN KT detailed how Appellant lifted up her shirt, exposed her breasts and "began to bite them,"[23] causing her even greater pain than in his initial bite to her abdomen. Following this, HN KT testified that Appellant pulled off her pants and began biting her inner thigh "with more and more force" and "much harder" than he had bitten her breasts or abdomen.[24] The most forceful and painful bites—those to her inner thighs—were memorialized in photographs that were admitted and published to the members. The Government also presented Prosecution Exhibit [Pros. Ex.] 4, a social media message containing a photograph HN KT had taken shortly after the incident and sent to Appellant showing the dark bruises on her left leg, and Prosecution Exhibit 5, the Sexual Assault Nurse Examiner's photographs taken over a month later that still indicated bruising on HN KT's left leg.

Throughout the trial, the evidence presented biting—not touching, grabbing, pressing, pulling, hitting, or other acts—as the cause of HN KT's bruising on her thighs. In closing arguments, the trial counsel argued that the Government proved that Appellant bit HN KT, and the TDC argued the opposite. There was no ambiguity at trial on this issue.

While Appellant avers "the military judge moved the goalposts towards [G]overnment"[25] in his instruction, "we are confident that the members would not choose an interpretation that rendered the preceding evidence, argu-

---

[22] *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (citation omitted).

[23] Record at 410.

[24] *Id.* at 414.

[25] Appellant's Reply Brief of 10 Jan 2019 at 1.

ments, and instructions moot."[26] Taken in context, we find no error, let alone plain error, in the questioned instruction.

## B. Ineffective Assistance of Counsel

Appellant contends that his TDC was ineffective in his representation by failing to object to what Appellant characterizes as a plainly erroneous instruction.

We analyze ineffective assistance of counsel claims under the test outlined by the Supreme Court in *Strickland v. Washington*.[27] In order to prove ineffective assistance of counsel, Appellant must show that his TDC's performance was deficient and that the deficiency deprived him of a fair trial.[28]

Having found the military judge did not err in instructing the panel, we find no deficiency in TDC's performance for not objecting to the same.

## C. Factual Sufficiency

Appellant avers his conviction was factually insufficient as the Government failed to prove beyond a reasonable doubt that he bit HN KT's breasts, legs, or inner thigh, and also failed to prove any of these acts were committed with the requisite specific intent.

### 1. The legal standard of review

We review questions of factual sufficiency de novo.[29] In testing for factual sufficiency, we "weigh[ ] the evidence in the record of trial and mak[e] allowances for not having personally observed the witnesses" in order to determine whether we, ourselves, are "convinced of the accused's guilt beyond a reasonable doubt."[30] We take a "fresh, impartial look at the evidence" and must "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[31]

---

[26] *United States v. Clugston*, No. 201500326, 2017 CCA LEXIS 43, at *28 (N-M. Ct. Crim. App. 31 Jan 2017).

[27] 466 U.S. 668 (1984).

[28] *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

[29] Art. 66, UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[30] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

[31] *Washington*, 57 M.J. at 399.

*2. The Government's case*

The members heard extensive, detailed testimony from HN KT. The TDC thoroughly cross-examined her on perceived discrepancies between her trial testimony, her prior Article 32 testimony and her sworn statement to NCIS. But the core of HN KT's allegations remained the same: Appellant came to her room in a drunken state and, without her consent, physically overpowered her, kissed her, and forced her onto her bed where he bit her abdomen, breast, and inner thigh, and ultimately penetrated her vaginally before she eventually broke away. She fled to her bathroom where she waited for Appellant to leave before returning to her bedroom and sleeping not in the bed, but on the floor—a practice that became common to her for months after as the result of Appellant's actions that night.

The Government presented Prosecution Exhibits 4 and 5, documenting the state of HN KT's visible bruising both soon after the assault and about 40 days later.

The Government also presented the messages Appellant sent HN KT in the days after the assault. Appellant wrote HN KT shortly after the day of the assault, saying, "Hey hope you're having a good day."[32] When HN KT did not reply, he wrote, "I hope you enjoyed your day today," and "If you want, I'd like to get together and talk soon."[33] When HN KT still did not reply, having had no contact with HN KT since he left the morning of the assault, Appellant wrote:

> I won't bother you again but I need to say this– I'm not entirely sure how the other night went. I was obviously beligerently drunk and dont remember most of it. I do, however, have this feeling that I royally messed up. . . . What matters is that I am ashamed of myself for being the way I was in your presence, and will be more ashamed if I disrespected you in any way. You don't deserve that. I'm really sorry that you had to see me like that. . . . I've been trying to piece the night together all week, and although I do not seek forgiveness, you need to know that it's killing me to know that I may have treated a woman the wrong way and want to correct it if possible.[34]

---

[32] Pros. Ex. 4 at 1.

[33] *Id.*

[34] *Id.* at 1-2.

HN KT replied, "You bruised me. A lot. After I told you multiple times to stop."[35] Appellant replied, "Really? I'm so so soo sorry. That breaks my heart knowing that I did something like that."[36] HN KT then sent a photo of her left leg, depicting dark bruises to her inner thigh and calf.

### 3. The Defense case

Appellant testified in his own defense, but his testimony was not compelling. He testified he lost all memories from the time he was drinking at the enlisted club until he woke up the next morning. His lack of memory stemmed from seven hours of drinking alcoholic beverages. In more than 20 responses to questions from TDC, trial counsel, and the members, Appellant said he was unable to recall the events at issue. A representative example of the nature of Appellant's testimony appears in this question from the panel:

> Q:    [D]id you bite . . . [HN KT]'s legs?
>
> A:    I do not recall like that night. I don't recall anything after being at [the enlisted club], sir, so I can't—I can't answer that question, sir. Sorry.[37]

Although Appellant testified that he did not think he was capable of committing the acts HN KT described, he could not testify that they did not happen. He testified that he woke up the next morning with his arm around HN KT in her bed and that the two exchanged pleasantries as they each got up to go about their Sunday plans.[38]

Additionally, the Defense presented the testimony of HN KT's friend, HM3 AL. HN KT confided in HM3 AL some details about Appellant's visit to her room on the night of the assault. On direct examination, HM3 AL testified that HN KT said a friend came to her room drunk, that she let him "sleep it off" in her room, but that the friend kept "trying to bite her" while she "kept on saying no and that she was pushing him away and that he never stopped."[39] On cross-examination, HM3 AL clarified that he had only *assumed* that HN KT let this drunk friend stay overnight in her room, noting that HN KT never said she did so. He also clarified that HN KT told him that

---

[35] *Id.* at 2.

[36] *Id.*

[37] Record at 596.

[38] In rebuttal, HN KT testified this never happened.

[39] Record at 511.

she was actually bitten throughout the night on the legs and that, following the incident, HM3 AL noticed that "[HN KT] definitely seemed more down at work, a little more secluded and definitely more argumentative with a few of her coworkers for a few months after that."[40] HM3 AL said that he believed HN KT had only told him limited information about the incident, "but [he] didn't want to force her to recall things that she might not feel comfortable telling [him] . . . . [or] force her to think about it or to talk about something that . . . she might not be ready to talk about."[41]

The Defense also presented the testimony of the barracks petty officer on duty the night of the assault to show that there were no reports of loud noises or unusual occurrences. An NCIS special agent testified he was unable to recover security footage due to HN KT's delay in reporting, and he did not attempt to find any witnesses who remembered hearing a woman screaming on the night of the alleged assault. Finally, the Defense presented two witnesses who opined that Appellant is a truthful person.

### 4. Appellant's argument

Appellant asserts the evidence is factually insufficient because he claims HN KT made inconsistent statements to HM3 AL. His argument fails to account for the entirety of HM3 AL's testimony as clarified on cross-examination and by members' questioning. On balance, we find HM3 AL's testimony is consistent with the testimony of HN KT and supports the members' finding that Appellant committed abusive sexual contact upon HN KT.

Appellant further claims the evidence is factually insufficient because HN KT did not provide photographic evidence that Appellant bit her breasts. He further argues the evidence is insufficient because, during their text message exchange days after the assault, HN KT only accused Appellant of biting her thighs, but not her breasts.

Finally, Appellant argues the Government did not prove he bit HN KT's body with the requisite intent to gratify his sexual desires. In the context of HN KT's testimony about Appellant's actions in kissing her, then leading her to the bed, then undressing her and biting her body, we find this is sufficient proof that Appellant acted to gratify his sexual desires.

---

[40] *Id.* at 516.

[41] *Id.* at 519.

*5. The evidence is sufficient*

HN KT's testimony was credible. It was corroborated by photographs, and it was consistent with her statements to the appellant via messaging and her statements to her friend, HM3 AL. The photographs depict large, round, dark bruises that are consistent with the bites HN KT described.

Appellant's testimony largely consisted of repeated statements that he had no memory of any of the events in question. Although Appellant attempted to explain his statements in Prosecution Exhibit 4 in a benign manner, we interpret those statements as proof of consciousness of guilt. Notably, in the messages, Appellant did not deny that he caused the bruises on HN KT's legs. Although he was not then accused of any misconduct, he took it upon himself to repeatedly send unsolicited messages to HN KT. When she did not respond, Appellant replied that he knew he "royally messed up," was "ashamed," and assumed that he "may have treated a woman the wrong way."[42] Although Appellant testified at trial that he had no memory of any interaction with HN KT that night, he wrote that he did not remember "most" of the night and was trying to "piece the night together all week," which suggests he remembered more than he claimed to recall.[43]

We note Appellant claimed that when he awoke in bed with HN KT—a fact she adamantly denied—his memory returned. Given the weight of the evidence in this case, we do not find this claim to be credible or to overcome the evidence in support of guilt.

Having reviewed the entirety of the record and after weighing the evidence anew, and making allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of Appellant's guilt and find his conviction to be factually sufficient.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights. Arts. 59 and 66, UCMJ. Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge TANG and Judge STEPHENS concur.

---

[42] Pros. Ex. 4 at 1-2.

[43] *Id.*

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court